JACOB DOW, appellant, vs. *the town of* HINESBURGH *and* ANSON WEED, appellees.

(*Ante.* Vol. 1, page 35.)

*Held*, That a settlement of a minister in an organized town, so as to vest in him the right of land reserved in the New-Hampshire charters, for the first settled minister, if made while the statute of 1787 was in force, must have been made in substantial conformity to the provisions of said act ; otherwise a minister could not have become a *first settled minister of such town*, so as to be entitled to the land.

That, to constitute such a settlement, there must have been a contract or agreement to settle, between the inhabitants of the town and the minister, and an ordination or installation of the minister over such inhabitants, in pursuance of such agreement; and that the settlement must have been, or at least, have been intended to be, a permanent one.

*Held, also*, That the ordination, not being matter of record, may well be proved by parol; but that if the agreement to settle be with the town, or the inhabitants thereof, in their corporate capacity, it must appear of record, or be shown to have been of record, and the loss or destruction of the record legally accounted for.

Instance of a non-suit permitted after verdict.

MOTION by the plaintiff, for a new trial, founded on exceptions, taken on the trial at the last term of Chittenden county court,

which were agreed to by counsel, and certified to this Court in the following *case made :—*

*Chittenden,*
*December,*
*1826.*

*Dow*
*vs.*
*Hinesburgh*
*et al.*

"This was an action of ejectment, brought to recover the possession of a certain tract or parcel of land, with the appurtenances, lying and being in the town of *Hinesburgh,* in said county of Chittenden, and described as follows, to wit, the east half of lot No. 30, in the second division.

On the trial of the cause, it was agreed by the parties, that in the charter of said town of Hinesburgh, one right of land was reserved for the first settled minister; that the town had been divided among the proprietors, and that in the division, the land in question was set to the right of the first settled minister.

The plaintiff claimed title from one *Reuben Parmelee,* who, he contended, was the first settled minister, and for the purpose of showing that fact, offered to prove, that the *Congregational Church* with sundry other persons, inhabitants of, and resident in said town of *Hinesburgh,* to the number of twenty-five or more, in all, met by mutual consent, on the 23d day of February, 1791, and agreed to settle the said *Reuben Parmelee,* 25 persons voting in the affirmative, and that in pursuance of said measure, the said *Reuben* was, on the 29th day of the same February, regularly ordained.

To the introduction of this testimony, the defendants objected, on the ground, that the town of *Hinesburgh* had, before this time, become an organized town, which was admitted by the parties, and that the said meeting was not authorized by any proceedings on the part of said town, and the Court rejected the testimony; to which decision of the Court, the plaintiff excepted.

The plaintiff then offered to show by parol evidence, that on the application of seven or more freeholders, a meeting of the inhabitants of said town had been warned, and holden, and that at such meeting, it was voted to settle the said *Reuben Parmelee,* twenty-five or more, voting in the affirmative, and that in pursuance of said vote, the said *Reuben* was regularly ordained on said 23d day of February, 1791. To the introduction of this testimony, the defendants objected, on the ground, that if any meeting had ever been warned, and holden, it must be shown by record, unless the record was proved to be lost or destroyed.

The plaintiff contended, if it could be shown, that in point of fact, a meeting had been warned and holden, it might be presumed that the record thereof had not been preserved, or had been lost by time and accident; but the Court rejected the testimony, and a verdict was taken for the defendants; to which decision of the Court, the plaintiff excepted.

Agreed to, &c.

*Adams,* in support of the motion, insisted, that the settlement of a minister *in fact,* (he being the first settled,) is all that is necessary to vest in him the right of land reserved to the first settled minister; and this, not being a matter of record, may well be proved by parol.

*Chittenden,*
December,
1826.

Dow
*vs.*
Hinesburgh
et al.

*Thompson* and *Allen,* for the defendants, contended,

*First,* that the offer to show a settlement of Mr. *Parmelee,* by the *Congregational Church,* with sundry others, to the number of 25, in the whole, was properly rejected, 1. because the town of Hinesburgh, having been *previously organized,* the proceedings in settling a minister should have been authorized *by the town,* as such. 2. Because there was no offer to show that such meeting was in pursuance of any warning on application of *seven freeholders,* or that the matter to be acted upon at such meeting was in any way notified to the people; or, that two-thirds of the inhabitants who met, *being legal voters,* and of a *similar denomination,* acted in hiring or settling the minister, which should have been the case, under the statute of 1787, then in force, usually called *the certificate act.*

*Secondly.*----The offer of *parol proof,* to show a settlement of Mr. Parmelee, *by the town,* according to the provisions of the act aforesaid, was also properly rejected, 1. because such settlement being a matter of record, the record is the best evidence of the fact. 2. The production of such evidence could not be dispensed with, without showing the *legal reason,* to wit, the loss or destruction of the record. This loss could not be presumed from the fact that the record was not produced—nor would the fact that it had been searched for and could not be found, furnish any evidence of loss; but on the contrary, that none had ever been made—and, consequently, that the proceedings were irregular and void.

*Van Ness,* in reply, contended that the *certificate act,* and the other acts of the legislature of Vermont, touching the support of the gospel, have nothing to do with the legality of the settlement of a minister. It is purely an ecclesiastical proceeding. And although those acts may facilitate the proceedings of those who choose to organize under them, they have no effect upon the legality of the settlement, so as to affect the right of the minister first settled, to the land in question.

He insisted, that ordination and settlement were synonymous, and consequently, that the proof of a settlement *by the church,* was improperly rejected, as well as the parol proof of a settlement by the town. That after a lapse of *thirty years,* as in this case, a legal settlement is to be presumed, the same as a grant.

HUTCHINSON, J. delivered the following opinion:

This is an action of ejectment, for a lot of land, which has been regularly allotted to the right granted to the first settled minister in said town, as is agreed by both parties.

It appears by the case, that the plaintiff claims title to the same, under one Reuben Parmelee, who, he says, was the first settled minister in said town. The town, by their tenant, Weed, having possession of the premises, and that, probably, by virtue of a statute relating to those rights of land, can hold possession, till some person, in the character of the first settled minister in said town, can establish his claim in that character. The case

Chittenden,
December,
1826.

Dow
vs.
Hinesburgh
et al.

shows, that this was attempted at the trial, in a particular way, which the court decided was incompetent; and the decisions then made, come now before this Court for a revision.

The case presents two questions, which are urged as being, either of them, sufficient to entitle the plaintiff to a new trial.

The plaintiff offered to prove to the jury, that, in February, 1791, the Congregational Church, with sundry other persons, inhabitants of said town of Hinesburgh, and residing therein, to the number of twenty-five or more, in all, met by mutual consent, on the 23d day of February, in said year, and agreed to settle the said Parmelee, 25 persons voting in the affirmative; and that, in pursuance of said measure, the said Reuben, a few days afterwards, was regularly ordained. This testimony was objected to and rejected by the court. The first question is, was this decision correct?

Again, the plaintiff offered to prove, by parol testimony, that, on the application of seven or more freeholders, a meeting of the inhabitants of said town had been warned and holden, and that, at such meeting, it was voted to settle the said Reuben Parmelee, twenty-five or more voting in the affirmative, and that, in pursuance of such vote, the said Reuben was regularly ordained, on the ———— day of said February, 1791. This testimony was objected to by the defendants, and was rejected by the court. Was this decision correct, is the second question?

A fact agreed in the case, and to be considered in deciding these questions, is, that the said town of Hinesburgh had become organized before any of these proceedings.

The charter of said town is not presented to the Court; but it is understood to bear date about the year 1763, and to be, in form and substance, like the New Hampshire grants, in general; reserving the same publick rights, among which was included "one full right or share, for the first settled minister in said town."

The merits of this cause have been presented, in the arguments, with no common share of ingenuity and ability; and the discussion seems to require the Court to decide, 1st----What constitutes a settled minister, within the meaning of the charter? and 2dly, by what testimony is the fact to be established? These questions will be considered, without any attempt to follow, numerically, the explanatory and enforcing parts of the several arguments.

There is no room for doubt, but that the object of the government, in granting a right of land to the first settled minister in said town, was to encourage a minister to settle, and preach the gospel among the people of such town, while the lands were uncultivated, and the inhabitants few in number, and unable to contribute largely for the pecuniary support of a minister. This must, of course, answer the double purpose of encouragement to the minister to settle among them, and assist the people to pay him.

Chittenden,
December,
1826.

Dow
vs.
Hinesburgh
et al.

The people have no control over this property, directly, so as to give a deed that would convey it; yet it operates as much for their benefit, as would the same amount of any other property which a minister might receive, on settling in town. The people of the town have an important interest, also, if the nature of this grant will permit them to exercise it, in selecting a minister whose taste and manners, talents and piety, are calculated to render him useful among them. The preaching is of no use, unless the people will attend and hear. By hearing the faithful administration of the word, the morals are improved, and the town receives a benefit.

While such objects are to be attained, the term *settled minister*, must mean something suited to those objects. It is not sufficient that a man who is a minister, should take up his residence in town and abide there, even during life. It is not sufficient that he should be settled in town, as a man, or as a farmer or mechanick; but he must be settled as a minister. It is not sufficient that he should be an ordained minister, and reside in the town; for all that might exist, and he never preach in town; but elsewhere, at pleasure. It is not sufficient that he should be ordained in town, for still he might perform all his parochial duties, in other towns. It is not sufficient that he should be an ordained minister, and live in town, and preach in town, for a limited time, or with liberty to desert them at pleasure; there must be something of a permanent nature in this settlement, as was well admitted by the plaintiff's counsel. It must be for the life of the minister. Not that he would forfeit the land if he should not, in fact, tarry during life. But, the settlement must be intended for life, or he has not become the settled minister in whom this right would vest.

If this be so, the settlement implies some contract with the inhabitants, or the proprietors, or people, of the town, having a right to act in the way they undertake to act, and by which the minister becomes holden to live in town, and perform the duties of a minister thus permanently, among them. The particular shape of this contract, and the manner of entering into it, in order to be thus binding, may depend upon the laws that are in force when it is made.

Probably no person would doubt the validity of a contract made with the inhabitants of such town, in their corporate capacity, and made in strict conformity with the provisions of any statute in force at the time. If settled upon any such contract, he might well be called the settled minister of the town; for such he would be, for a time, at least. But, as an ordination alone would not entitle him to the land, so neither would such a contract, of itself, produce that effect. Both must concur. There must be the contract, and he must be ordained over the people, in pursuance of that contract; and the connexion formed by such contract and ordination, must, as before intimated, both in its terms and intention, be permanent as the minister's life. Such a settlement vests the title in him; and, when once vested,

*Chittenden,*
*December,*
*1826.*

*Dow*
*vs.*
*Hinesburgh*
*et al.*

would not be divested by any after separation, or the dissolving such connexion.

The Court are not called upon to decide how large a portion of the inhabitants of any town, less than the whole, could make a valid contract of this nature, provided they be authorized so to contract, by any law in force at the time. But, there is no risk in saying, that it never was the intention of government, in making this grant, that the right should vest in a minister, who, though in some sense, a minister in the town, yet, is settled by strife, by and over a few of the inhabitants, and in no sense the minister of the town, nor one from whose administration the people of the town at large, would be likely to receive any benefit. This suggestion does not result from any supposition that there was any strife in the settlement of Mr. Parmelee, or any thing unfair intended. Probably they may have slid along too harmoniously, at the time, to realize the necessity of placing proper guards around their contracts. But this is true, that evils of such a nature might result from such a construction of the grant, as would enable a mere minority to proceed, as individuals, or in any other way that might not be generally known in town, and not made known in some way pointed out by law, and by which all must be presumed to have notice.

This view was undoubtedly entertained by the legislature of Vermont, when they passed the several laws alluded to in argument, relating to this subject. By the statute of 1783, on page 472 of the State Papers; and the statute of 1787, on page 202, of old book, which was in full force when the attempt was made to settle Mr. Parmelee, the legislature made ample, and, what they considered, suitable provision, upon that subject. By the last of said statutes, they adapted their provisions to incorporated towns and parishes; and also to such persons as should not be included in any incorporated town. This town of Hinesburgh, as the case states, was an organized town, and this statute required that any meeting for the purpose of building a meeting-house, or settling a minister, should be warned by the clerk, on application of seven freeholders; that the warning should mention the time and place of meeting, and the matter to be debated; and give twelve days notice, by posting up this warning at the most publick place or places in the town. This is the course pointed out by the statute, to prevent so important a measure as the building of a meeting-house, or settling a minister, without notice to the people, that they may convene and act upon the subject. The legislature supposed, after all this notice, that the people might be remiss about convening, or undertake too much for their ability, when convened, or proceed with such want of concord, or that so small a number might attempt to govern the measures, that it would generate confusion instead of religious harmony. To prevent which, they proceed, in the same statute, to delineate and guard the powers to be exercised at this meeting; and declare, that two-thirds of those voting, (and all must be legal voters) must agree to the measure; and also, that there must be twenty-five legal voters in the affirmative.

Chittenden,
December,
1826.

Dow
vs.
Hinesburgh
et al.

This is said, in argument, to be a provision by which the majority may bear rule in such matters. This is true; and, in all meetings of corporate bodies, legally convened, the legal majority do, and must govern. But the wisdom of this statute is displayed in this, that it presents a barrier, and a strong one too, against an actual minority acting and ruling as a legal majority.

We seem now to have arrived at the conclusion, that, as the town of Hinesburgh was not only an incorporated, but an organized town, when the proceedings in question were had, the contract of settlement, on which the ordination was predicated, must be made in substantial conformity to the provisions of the foregoing statute of 1787, which was in force at the time, or Mr. Parmelee could not have become the first settled minister of said town, so as to be entitled to said right of land, or so that the same would vest in him.

An objection to such a conclusion is urged, from the dire consequences from marriages, presumed to have been solemnized by Mr. Parmelee, while he was officiating as the settled minister of the town. It might be a sufficient reply to this, that the Court cannot decide that to be legal which they deem illegal, for the sake of warding off the ill consequences of a past illegal course. But the Court are not confined to a reply which would administer so little consolation to persons thus situated. If Mr. Parmelee, who must have been a party to the transaction, would claim any thing under the settlement, merely, he must see to it, that the settlement is according to law. But not so of third persons whose duty it is not to investigate the qualifications of those persons who are publickly and daily executing the duties of an office. With the exception of cases where a statute declares the doings of an officer void, till certain prerequisites are attended to, such as the recording of the deputation and oath of a deputy-sheriff, it is sufficient for third persons, that they employ a man, holding in fact, and believed by every one to hold of right, the office of which he performs the duties. In tracing a vendue title, proof was offered that the magistrate who had signed a warrant to collect the tax, though appointed and acting, yet was not sworn. The late Judge Elsworth, presiding at the trial in the circuit court in this state, recognized the above principle, and decided, that the collector's proceedings were not vitiated by such neglect of the magistrate to take upon him the oath of office. Many justices of the peace in this state, who are appointed and sworn from year to year, never take and subscribe the oath of allegiance, and oath of office, in the way pointed out by the constitution. Should they be saluted with a *quo warranto,* calling upon them to show wherefore they exercise the office without taking the oaths required by the constitution, and taking them in the manner there required, they might find themselves in difficulty. Yet, the executions by them issued, and the marriages by them solemnized, are valid, in favour of third persons who had no reason to suspect such irregularity about the oath.

In the 7th of *Mass. Rep.* 48, *Milford* vs. *Worcester*, it is expressly decided, that a marriage by a justice of the peace, or an ordained minister, without the publication of banns, is yet valid, though the person marrying is subject to a penalty of fifty pounds. The marriage there decided to be void is, where the parties undertook to marry themselves in the presence of a justice, who, as was found by the jury, refused to act at all upon the occasion.

Leaving, therefore, unmolested those who are fearful of the consequences above recited, we proceed to inquire, by what testimony a settlement, legal in itself, must be proved? We answer, the ordination, not being in its nature a matter of record, may be proved by parol. If the contract was made by the inhabitants, in their corporate capacity, it must be proved by the record, or the absence of the record accounted for.

We now ask, was the testimony offered and rejected, such as ought to have been admitted? We think it was not. With regard to that first offered, there is no intimation what proportion of the inhabitants were together; nor how they happened to meet together; nor what, or whether any, notice was given to others to meet; nor whether two-thirds present agreed in their measures. Nor is there any thing like town meeting about it.

With regard to the evidence secondly offered, and objected to, it should be remembered, that at this period, the statute of 1787, above alluded to, was in full force, and similar laws to those now in force, with regard to record evidence of the proceedings in town and parish meetings. Then, of course, the objection was well taken, that parol testimony was not admissible, till the loss of the record was first proved. The urging parol proof of the fact which ought to be proved by the record, as a ground of presumption that the record is lost, seems arguing in a circle, which can lead to no just conclusion whatever.

Furthermore, the statute requires that two-thirds of those present should be agreed; as well as that twenty-five should vote in the affirmative. This was decided two or three years ago, by the supreme court in a suit *Pierce Burton* against *Ira Baxter*, a collector of a minister tax.

> The result of all this is, that judgment must be entered in favour of the defendants on the verdict.

SKINNER, Ch. J. I feel it my duty to say, that I do not wish to be considered as assenting to the opinion just given as the opinion of this Court, although I am not so opposed to it as to wish to enter an express dissent. I feel as though the facts *secondly* offered to be proved, amount to a legal settlement:—at least, I have great doubts if they do not.

PRENTISS J. absent, from indisposition.

After the foregoing opinion was pronounced,

*Van Ness*, for the plaintiff, moved for leave to enter a nonsuit.

Chittenden, December, 1826.

Dow vs. Hinesburgh et al.

Chittenden,
December,
1826.
SKINNER, Ch. J. The general rule is, that a non-suit shall not be entered after verdict. But the Court will, for the furtherance of justice, sometimes permit it. The Court, however, must be satisfied that the party applying has a good cause of action, and that he has, without fault, mistaken the grounds of his right.

Dow
vs.
Hinesburgh
et al.

THE COURT thereupon postponed the further consideration of this motion till the adjourned term, after the session in *Grand-Isle.*

At the adjourned term, PRENTISS, J. having come into court,

*Van Ness* moved the Court so far to alter the record of the judgment pronounced, as that the case may stand open for further argument. This he urged, on the ground that only three judges were upon the bench, and the Chief Justice was not in favour of the opinion given; so that if the absent judge was with the Chief Justice in opinion, the decision is actually that of a *legal* minority of the Court. (a)

(a) See Stat. 118, ch. 7, No. 46, § 1.

On a subsequent day,

SKINNER, Ch. J. said, the Court think it improper to vacate the judgment pronounced. But considering the importance and difficulty of the main question, the Court have come to the conclusion to permit the plaintiff to avail himself of his prior motion, to enter a non-suit.

So, the entry upon the record was of judgment for the defendants as upon a non-suit.

*Charles Adams* and *C. P. Van Ness,* for the plaintiff.

*Heman Allen* and *J. C. Thompson,* for the defendants.