TOWN OF CHARLESTON *vs.* JONAS ALLEN. · ORLEANS, April, 1834.

The proceedings of churches and ecclesiastical bodies may be shown by parol, their records, although kept by authorised agents, not being legal evidence.

To constitute *a first settled minister* in a town, so as to entitle the person to the right, as usually reserved by the Vermont and New-Hampshire chartors, for the first settled minister, there must be a specific engagement between him and the people, that he should remain permanently in the ¡performance of the duties of a minister in said town.

This was ejectment for Lot No. 61, in the first division in Charleston, drawn to the right of the first settled minister in said town.

The plaintiff read in evidence the charter of said town, from the state of Vermont, which, in relation to the minister right, reads as follows: "One share or right to the first settled minister of the gospel in said township, to be disposed of for that purpose, as the inhabitants thereof shall direct;" and proved that the lot in question was duly severed to the first division of the right aforesaid. And the possession of the defendant being admitted, they rested their case.

The defendant read in evidence from the town records of Charleston, sundry warnings and votes of town meetings, relating to the right of land aforesaid, and to the settlement of defendant as a minister of said town, beginning in August, A. D. 1824, and ending in March, A. D. 1829, all of which, of importance in this case, may be found by reference to the opinion of the court, and the arguments of counsel. And it appeared that during all that period, and for a while previous, and ever since, the defendant had lived in said town, and been a preacher of the denomination of christians, called Free-Will Baptists. It also appeared, as early as 1822 or '3, persons of the denomination aforesaid, to the number of about twenty, residing in the towns of Holland, Salem, Morgan and Charleston, associated together as a church, by the name of " *The Free-Will Baptist Church in Charleston,*" or " *The Charleston Free-Will Baptist Church,*" the number of whose members was constantly augmented, especially in Charleston, so that upon a re-organization, about three years ago, two churches of the denomination aforesaid were organized in Charleston, alone. It also appeared that the first association aforesaid, had been recognized as a church by the other churches of the order aforesaid, and had been admitted, as such, into the general conference of those churches, previous to the year 1825.

ORLEANS,
April,
1834.

Charleston
vs.
Allen.

The defendant offered to prove by the testimony of witnesses, that in January, 1825, the said Charleston church made application, by their delegates to the general conference aforesaid, for a council of Elders to ordain the defendant as a minister over said church—that a council was thereupon appointed, who attended at Charleston in said month of January, 1825, and examined and ordained the defendant over said church, according to the usages of said denomination. It appeared that said church and conference had each a clerk, and kept written minutes of their proceedings. The plaintiff objected to said parol evidence, insisting that the records should be produced. But the defendant conceding that the ordination was not claimed to operate as a settlement, but as a qualification of, or authority to the defendant to administer the gospel ordinances, and perform the other functions of a minister in said church, the court overruled the objection; and the witnesses testified to all the facts so offered to be proved, and were neither impeached or contradicted by other evidence.

It did not appear by any thing said at the ordination, or by any evidence as to the implied obligations resulting from it, or by any other express evidence in the case, for what length of time the defendant undertook to discharge the duties of a minister in said church in consequence of his said ordination. There was evidence tending to prove, that about the time of said ordination, the defendant contracted with said church, or the inhabitants, to preach in said town for three years; and it was proved that, for three years or more after said ordination, he did preach there on Sabbaths and other usual occasions, with but few if any interruptions: and that since that time he had continued to preach in said town, but with less regularity, having frequently been absent in other towns on Sabbaths, and having for some part of the time but rarely preached at all.

The plaintiff offered to prove by the testimony of witnesses, that in March, 1829, the defendant was not under any obligation to any church or society in said town, or to said town, to preach a single day. The vote then passed was, that J. Allen be the first settled minister in Charleston, by his deeding the northern half of the first, and also the second and third division of the minister's right, and that the object of the vote then passed in town meeting, to which reference is above made, was to compensate him for past services; and that by advice and di-

Orleans,
April,
1834.

Charleston
vs.
Allen.

rection of the Elders, at his ordination aforesaid, he was not at liberty to contract with any people as a preacher, except at his own election as to the time he should remain with them; which evidence was objected to, and excluded by the court.

The plaintiff also offered to prove, that after the passing of said vote of March 1829, the defendant was duly called on to execute the condition of said vote, by re-deeding a portion of said right of land, and that he absolutely refused to execute such deed. This evidence was also objected to, and excluded by the court.

The jury were instructed that if they found the facts, that the defendant had notice of the vote aforesaid, declaring him to be the first settled minister, and that he assented to it and claimed the benefit of it, he thereby acquired a title to the land in question; and whether he had or had not consented to deed any portion of the right, would not affect his title for the purposes of this action.

Verdict and judgment for the defendant; and to the above decisions and charge of the court, the plaintiff excepted. Exceptions allowed, and passed to the supreme court.

*E. H. Starkweather for plaintiff.*—Did the county court err in admitting oral testimony to prove defendant's ordination, it being matter of record in the church and conference?

It is assumed as an incontrovertible position, that the best evidence which the nature of the case admits, is to be adduced.—1 Stor. Ev. 102, sec. 75—388, sec. 10. And as there were records of the proceedings of the church and conference kept relative to defendant's ordination, such record is more to be relied on than the recollection of witnesses.

Although it may be true, that because facts are committed to writing, it does not necessarily exclude the testimony of witnesses relative to such facts; yet this extends only to cases of mere memoranda, proper only to be used to assist the recollection.—*Doe* vs. *Perkins et al.* 3 T. R. 749–53–54. And it is believed the present is clearly distinguishable from that class of cases. The ordination of defendant was effected by the concurrent acts of two associate bodies, evidenced by their own records kept by their authorised agents—defendant being a member of both of said communities, and therefore not a stranger to the record. If it is of any consequence to show

ORLEANS,
April,
1834.

Charleston
vs.
Allen.

an ordination, it should be sanctioned by the denomination to which defendant belongs; and it would seem that the records must be the only legitimate evidence that the ordination was thus in conformity to such usages.

The second question is, as to the operation of the votes of the said town of Charleston, as they appear upon the town records. Two votes only, among those referred to, have any direct bearing in the case—the others only tending to characterize the transaction. The first of said votes was passed 10th June, 1828, and reads as follows, viz: "Voted not to accept of the proposals of Elder Jonas Allen, respecting the right of public land; but on motion, it was voted, that he should have half of the first division lot, and if a legal settlement is not already made, that it should be done in a legal manner." Second vote was passed 16th March, 1829, and reads thus: "Voted that Jonas Allen be the first settled minister of the gospel in Charleston, by his deeding to the town the north-easterly half of the first division lot of land granted by charter to the use and benefit of the first settled minister in said town—also the second and third division of said land."

By these two votes, it appears that the plaintiffs intended to pass one half of the land in question to defendant, on condition of his deeding the residue of the right to the town, to be held by them for the support of the gospel. This the plaintiffs had a right to do by the charter.

But the defendant contends that the plaintiffs' consent to pass a part, must vest the whole in him. The force of this reasoning is not perceived. Grant that they cannot divide the estate: does the attempt of the trustee (if you please thus to denominate the town) to dispose of a part of the trust estate, in a manner unauthorized, work a forfeiture of the whole? But the town had the power so to dispose of the right.

It is a disposition within the spirit of the grant; and courts will go all reasonable lengths to protect such a disposition: and as plaintiffs have only consented that defendant take a specified portion of said estate, by his complying with certain conditions, he can only take according to the manifest understanding of the parties; for the intent of the parties must govern.—*Stewart* vs. *Thompson*, 3 Vt. R. 263.—Shep. Touch. 83-6-7.— 1 Swift. Dig. 222, rule 1; 224, rule 7.—2 Comyn 533.— 1 T. R. 703, *Doe* vs. *Burt.—Horton* vs. *Horton*, 7 T. R. 653-4.—*Chester* vs. *Willan*, 2 Saund. Rep. 96, note 1.

Orleans,
April,
1834.

Charleston
vs.
Allen.

Again : It is contended that the town cannot divert the trust estate from its proper channel ; and, inasmuch as the charter points out the person capable of taking the estate, one wanting the charter requisites cannot by any possibility take ; and defendant not being a settled minister within the intent of the charter, cannot take any portion of the estate.—*Dow* vs. *Hinesburgh*, 2 Aik. Rep. 18.

The legislature intended to furnish the new settlements with a preached gospel ; and a person possessing the prerequisite qualifications, who would enter into the necessary engagements with the town, would be entitled to the pittance allotted him. Any other disposition of the estate would be a gross fraud upon the grantors at least ; and their benevolent intent is to be carried into effect if possible.—*Horton* vs. *Horton*, 7 T. R. 754.—1 Swift. Dig. 223, Rule 3.—*Stewart* vs. *Thompson*, 3 Vt. Rep. 263.

Fraud vitiates all contracts.—1 Swift. Dig. 308—3 Coke, 77.—1 Burr. 395.—*Hayne* vs. *Mattey*, 3 T. R. 441-2.—1 Comyn 37.—*Leicester* vs. *Row*, 4 East. 380.—*Howard* vs. *Castle*, 6 T. R. 644.—*Cockshatt* vs. *Burritt*, 2 T. R. 765.—*Jackson* vs. *Loomis*, 4 T. R. 169.—*Boynton* vs. *Hubbard*, 7 Mass. R. 112.—*Man. & Mech. Bank* vs. *Gore et al.* 15 Mass. R. 75.—*Buffington et al.* vs. *Garrish et al.* 15 Mass. R. 156.—*Jackson* vs. *Duchain*, 3 T. R. 552-3.

The plaintiffs' voting the defendant first settled minister is only giving their consent that he may become such, which is a necessary prerequisite by charter. Can this be of any avail, unless defendant be capable of taking an estate, and enter into the necessary arrangements, and assume the proper responsibilities on his part? It would seem not ; for there must not only be a consent on plaintiffs' part, but a settlement in fact— such an one as was contemplated by the charter.—*Dow* vs. *Hinesburgh*, 2 Aik. Rep. 22.

3. Again, it is contended, that the deeding to the town was a condition precedent; therefore, until this condition was complied with, if every thing else were right, defendant is not settled, there being something for him to do to enable him to take the estate ; and by refusing to comply with such condition, defendant has disclaimed and annulled the contract on his part, which authorizes plaintiff to treat it as at an end, and which leaves defendant without the vestige of a claim on which to hang

ORLEANS,
*April,*
1834.

Charleston
*vs.*
Allen.

his defence.—*Hattam* vs.*East India Company,* 1 T. R. 638,–445—*Smith* vs. *Wilson,* 8 East. 438, 445.—*Worsley* vs. *Ward et al.*—6 T. R. 710–19–22.—*Porter* vs. *Shepherd,* 6 T. R. 665–68.

And, although it should be considered by the court, that the condition or limitation annexed to the vote of the town is one which they had no right to annex, and illegal; yet, being a condition precedent, it must be performed, or no right can be acquired under the vote. For a grant or devise, with an illegal condition precedent annexed, vests no right until the condition be performed. It is different, if the condition be subsequent.—6 Petersdorff's Abr. 47, and note.—*Briton* vs. *Lord,* Faulkland, 3 ch. 130.—2 Vernon, 338–9.—1 Bro. Ch. Cas. 55, and the other cases there cited, both in law and equity.— 7 T. R. 653, *testator's intention.*—3 Vt. Rep. 265, *intention of parties,*—1 Swift, 261.—*Doe* vs. *Buck,* 1 T. R.

*E. Paddock, contra.*—The decision of the court in overruling the objection made by the plaintiff, to the ordination being proved by parol, would have been correct, without any concession by the defendant; for, if the minutes taken by the respective clerks of the conference and church had been present, neither could have been read in evidence; they might have been used by a witness to refresh his memory, but nothing more. It would seem from Elder Allen's situation, in March, 1829, there was no obstacle in the way to his being settled; he was perfectly free from obligation to preach to church or town; yet, his relation of pastor of said church continued. And as to the object of the vote, admitting they intended the half of the first division as compensation for past services, the law would give him the residue, he having been declared, by a vote of the town, their settled minister; and whether the evidence had been admitted or rejected, it would not have varied the legal effect of the vote.

The provision in the charter, "to be disposed of for that purpose as the inhabitants thereof shall direct," cannot be construed to authorize the town to vary the destination of the land, and apply it to any other use, or give it to any other person than the first settled minister of the gospel; but is intended to protect the town against having the right go to one who should not be a minister of their choice. Therefore, having declared by their vote that he was and should be recognized as

ORLEANS,
April,
1834.

Charleston
vs.
Allen.

the first settled minister of the gospel in the town, the condition to such vote was void, being repugnant to the grant or vote—for the vote has the effect of a grant.—1 Shep. Touch. 79. And the plaintiffs have no right, either in law or equity, to have any portion of the land deeded. It does not appear that Allen procured or even knew the vote was to be taken, nor has he ever promised to redeed.

The opinion of the court was delivered by

MATTOCKS, J.—The first question presented by the bill of exceptions is, whether parol testimony was properly admitted to show the application of Charleston church to the conference to ordain it, and also the ordination of the defendant, as a minister of the gospel. The plaintiff contends that the minutes of the clerk of said church and conference should have been produced. There is no ground for the objection, as these scribes were not officers, and their minutes would have been no legal evidence, and could not have been read if produced. They might have been memoranda to refresh the memory of a witness as to what he knew without them. The transactions of which these papers were a history, might as well be proved by other witnesses, as those who made the minutes, if the purpose of the proof was to show an ordination as a settled minister. This point was so decided in *Dow* vs. *Hinesburgh & Weed*, 2 Aik. 18. The other questions that have been argued relate to the construction of the charter, the votes of the town, and the settlement of the defendant, as a minister, in the town. It is a Vermont charter, and differs from the New-Hampshire grants, and also from some of the Vermont charters. The wording is, "one share or right for the first settled minister of the gospel, in said township, to be disposed of for that purpose, as the inhabitants shall direct." The town passed several conditional votes upon the subject of settling the defendant as their minister, and it has been discussed whether the doings of the town have constituted him a settled minister, so as to take the land under the charter; but there is one prominent defect in the settlement, as the court view it, which, by two reported cases in this state, has been decided to be fatal. We learn from the exceptions, and the votes of the town referred to, that the defendant was first a preacher of the gospel;—that he gathered a church, and in 1825 he was there ordained, which constituted him a minister of the gospel, with a

ORLEANS,
April,
1834.

Charleston
vs.
Allen.

right to administer the ordinances;—that the inhabitants of the town warned sundry meetings, and passed several votes on the subject of the defendant's being their settled minister, and relating to the minister's right of land. Among others, in 1825, the 9th article of a warning was, " Whereas, the council of Elders, who ordained Elder Jonas Allen, directed and advised him not to settle as a minister of the gospel for any set or limited term of time,—Therefore, to see if the town will settle him as a town minister of the gospel, in any other way, or direct and empower the union society to do the same :"—At the meeting it was voted to pass over this article. The last vote, 16th March, 1829, was, " That Jonas Allen be first settled minister of the gospel, in Charleston, by his deeding to the town the northerly half of the first division lot of land, granted by charter, to the use and benefit of the first settled minister, in said town, and also the second and third division of said right of land."

The defendant, about the time of his ordination, contracted with the church, or inhabitants, to preach three years, and he did so ; and since, he has continued to preach there, more or less, but not all the time ; and the plaintiffs offered to prove, that in March, 1829, when the vote of settlement passed, defendant was under no obligation to preach in town at all ; and that he refused to deed back part of said land.

At the time defendant was ordained, in 1825, he does not claim to have been settled.—At the time of the vote of settlement in 1829, the three years had expired; and there is nothing in the case that indicates a new contract, as to the time. The charge of the court goes on the ground, that defendant's accepting the vote of the town, constituted him a settled minister ; and if this all does not shew, that defendant was under no obligation to tarry as a minister, for any length of time, then defendant should have been allowed to prove, that he was not, and could not be, agreeably to the canons of the conference to which he belonged. It must therefore be regarded at present, as a case without contract or stipulation, to remain the minister of the town or society, for any definite time ; and of course the defendant was at liberty to exercise his free will as to the time of his departure from his charge in Charleston, as a sense of duty should afterwards dictate. The question is, therefore, whether, if other things were all regular, he could, in that situation, be a settled minister, or a first settled minister, within the mean-

ing of the charter.   And this is what has been determined in the cases alluded to.—Town of *Sheldon* vs. *Goodsill*, 1 Aik. R. 225, and *Dow* vs. *Hinesburgh & Weed*, 2 Aik. 18.— In these cases, it was expressly adjudged, that there must be a permanent settlement, an engagement to continue for life ; and the reasons, in the last case, are given at large.   With these decisions, we see no reason to be dissatisfied ; at least so far as it requires the engagement to be of a permanent character, and not optional in the minister to go when he pleases.   These cases did not decide the form and manner of entering into this engagement, nor is it necessary for us.   It is usual, in settling a minister, if he is a novitiate, to ordain him ; if he has been ordained, to instal him—the condition being previously agreed upon.   The solemn ceremonies, on such occasions, seem to indicate that the minister is wedded to the church and people who have chosen him.   Other forms less imposing might, perhaps, suffice ; but in some shape the shepherd must contract an obligation to abide by the flock, or he will not be entitled to the reward.   When the engagement is entered into, and the minister is settled, the title to the land is instantly vested in the incumbent, not subject to revert to the town, even in case of the wilful failure of the minister to perform his duties.   It is only by ecclesiastical censure that the parish can compel him to perform, or punish for the neglect of duty.   As the price of instruction is paid in advance, there should be some explicit understanding as to the time the teaching should be continued, so that no man of piety could attempt to evade it.   There are, indeed, some most respectable christian denominations, who do not permit their ministers to locate for life, nor permanently ; and who, therefore, cannot take the benefit of these grants. These sects, at the time of the grants, either were not so numerous as to attract the attention of the legislature, or the descendants of the pilgrims did not then possess so much the spirit of christian equality as now prevails ; which, it is impossible now to know, and would be useless to inquire, as it is not in the power of the court, by any known rules of interpretation, to correct the procedure, since the spirit and reading of the grants manifestly exclude these missionary and apostolical portions of the christian ministry from the benefits of these public gratuities, to the infant settlements.

But this exclusion relates only to a part of the Vermont

ORLEANS,
*April,*
1834.

Charleston
vs.
Allen.

ORLEANS,
April,
1834.

Charleston
vs.
Allen.

grants; as many of the charters grant the lands, not to the first settled minister, but to the use of the ministry, subject to the control of the inhabitants of the town,—therefore, the exclusion is not very extensive, and not having been made during the extensive existence of the religious societies of the present day, may not be regarded as invidious. In this view of the case, considering that the engagement of the defendant to be the minister in Charleston, if any, was of a temporary and not of a permanent character, for this reason, without examining for others, we consider he was not the first settled minister; and, therefore, the title to the land, was never vested in him; or if there was any doubt as to the nature and extent of his engagement, then the evidence offered by the plaintiffs, upon this point, should have been received.

The judgment of the county court is reversed.