WILLIAM LAMPSON and AMOS W. BARNUM *vs.* THE TOWN OF
NEW-HAVEN, *(In Chancery.)*

That a town can give no title to the glebe land, in such town, except by a lease with annual rent, as pointed out by the statute.

That where a conveyance was made, and note received for the consideration money, and that secured by a mortgage of this and other lands, this Court grants such relief as equity requires, to set both parties back, to put their contract into such form as the law will sanction.

This cause was set down for a hearing upon an amended bill, and the answer of the respondents, and a traverse to that answer.

The substance of the amended bill, in the case was, That the town of *New Haven*, on the 20th of March, 1807, executed a conveyance of the *glebe lot* in that town to *William Lampson*, for a time *as long as water runs and grass grows*, and received therefor his promissory note for fifteen hundred dollars, payable on or before one hundred years from date, with interest annually ; That, to secure the payment of the said note, the said *Lampson* mortgaged the same lot, and another lot, called the *Bird lot*, which he had previously owned, of an equal, or greater value, believing, that, on the payment of the note, he should acquire a good title to the *glebe lot*. There was also a provision, on the part of the town to indemnify *Lampson* in case he should be ejected. *Lampson* took possession and paid rents, until 2d December, 1816, when it was agreed between him and the select-men, that he should

quit-claim both lots to the town, and take a lease of both, similar to the first lease, and then execute a new note like the other and mortgage both lots to secure the payment.  *Lampson* executed the writings, on his part, according to the agreement; but by some mistake, the lot, called the *Bird lot*, was omitted in the lease to him.  *Lampson* continued to occupy both lots and pay rent, till Dec. 8, 1817, when he sold to *Barnum*, with warranty, for $1000, which was principally for a debt due *Barnum*.  *Barnum* occupied and paid interest, till 1st May, 1819, when, believing the writings void, and that it was a mistake or deception, that the *Bird lot* was not in the lease, and being sued by the town, he cited *Lampson* to defend; but no defence was made, and the town ejected him.  The bill concluded by praying relief.

The town of *New Haven* by their agent, *Jonathan Hoyt*, put in their answer; in which they set forth that, in the year 1805, one *Hosea Bacon* was in possession of this lot, and had made divers improvements and betterments upon it; and, in 1807, said *Lampson* requested the town to pay *Bacon* for his betterments, and lease the lot to him, *Lampson*, offering to give a rent of $90 a year—That the town complied with his request, and paid *Bacon* for his betterments, &c. $466,66; and then conveyed to *Lampson*, as set forth in the bill, taking of him the note and mortgage security of the two lots as set forth in the bill—That the rent, or interest, was not paid, and the defendants brought their writ of ejectment, and obtained a decree of foreclosure—That after this, *Lampson* proposed to relinquish the lot, called the *Bird lot*, for the depreciation of the *glebe lot*, and take a new lease of the *glebe lot*, and give back a similar note as the other, and mortgage the lot as security—That this was done in December, 1816. The answer admitted the conveyance from *Lampson* to *Barnum*, and the action of ejectment, against *Lampson* and *Barnum*, mentioned in the bill.  The answer further stated that *Bacon* offered sixty dollars a year rent for this lot: also, that both lots were worth no more than the *glebe lot* was worth in the outset, whether the value of the land, or the value of the use, be considered.

*The counsel for the Orators*, referred to the following authorities, but did not read all of them.—*D. Chip. Rep*, 369. *Bush* vs. *Whitney.*—1 *Fonb.* 116 to 120.—*Mos.* 364, *Lansdown* vs. *Lansdown.*—3 *P. Will.* 315, *Pusey* vs. *Desbouvrie.*—2 *P. Will.* 151, *Uvedale* vs. *Halfpenny.*—2 *Atk.* 591, *Pullen* vs. *Read.*—1 *Mad.* 50, 51, 73, 75, 268.—1 *Ves.* 126, *Bingham* vs. *Bingham.*—5 *Con. Rep.* 468, *Watson et al* vs. *Wells.*—3 *Day's Rep.* 402, *M'Call et al.* vs. *M'Call.*—*Cooper,* 308, *Edwards* vs.

ADDISON,
January,
1829.

Lampson et al.
vs.
New-Haven.

*ADDISON,*
*January,*
1829.

*M'Lacy.*—8 *Com. Dig.* 367.—14 *Johns.* 501, *Lyon et al* vs. *Brockway et al.*—2 *Johns. Ch. Ca.* 585.

Lampson *et al.*
vs.
New-Haven.

The Counsel for the Respondents, cited 1 *Johns. Ch.* 213, *Bumpers* vs. *Platner.*—2 *id.* 519, *Abbot* vs. *Allen.*—5 *id.* 29, *Chesterman* vs. *Gardner.*—5 *Con. Rep.* 528, *Barkhamstead* vs. *Case*

HUTCHINSON, Ch. after stating the case, announced the decree of the Court. The conveyance from the select-men to *Lampson* may operate as a license for *Lampson* to occupy, so as not to leave him a trespasser upon the town ; but as a conveyance of the land,for which it was intended,is void,both upon principle and authority. The town had no other right to these lands, than to lease them out, upon an annual rent, as directed by the statute.— The annual rents they might, and must, appropriate for the support of schools : but, they have no right to anticipate the future rents, or, in other words,sell the land, and receive the pay for the same to the injury of the future generations, that may inhabit the town. If they take proper care to secure and collect the yearly accruing rents, they derive the benefit of the same in support of their schools; otherwise, all the avails await the use of those in future, who will take the proper care. In short, the town have no right to these lands but what is given by the statute ; and, if they exercise any right, they must exercise the same according to the statute,or their doings are void. This doctrine is fully established, by this court, in the case cited from *Chipman's Reports.*

In the present case, instead of giving a lease requiring the payment of a yearly rent, the select-men gave a conveyance, to exist *as long as water runs, or grass grows;* which is as near forever as earthly matters can be; and received a note of $1500, payable within one hundred years, and the interest to be paid annually.— And, to secure this payment, they took of *Lampson* a mortgage of this lot, and another lot of nearly equal value, called the *Bird lot.* Thus, *Lampson* must pay ninety dollars a year interest, till he paid the note. He might pay the note as soon as he pleased, but must pay it in one hundred years, or lose both lots of land.

The town, then, by an act wholly unauthorized,made large provisions for schooling, for about three generations, but took no proper care for those that should come afterwards. Very especial care is, also, taken, in the expressions of this conveyance, to exclude every possibility of construing it to be what it ought to be, a lease securing rent, by inserting a provision that the mortgage is the entire security for the rent.

ADDISON,
January,
1829.

Lampson et al.
vs.
New-Haven.

The select-men mistook, and exceeded, their rights and powers: and *Lampson* bought what they could not, and did not, convey. And, it must be presumed, that *Lampson* would not have contracted to pay so large a yearly rent, forever, as he virtually contracted to pay, for the time being, while he retained the power to put an end to the payment of rents, at any time, by payment of the note. Nor can it, for a moment, be presumed, that *Lampson* would have jeopardized his other lot, by a mortgage to secure the payment of rent, merely, upon the *glebe lot*. He must have supposed he was obtaining a valid title to the *glebe lot*. This he could never realize, through want of power in the select-men to do what they undertook to do.

By the operation of the contract made, and the rights at law, accruing to the town under the mortgage, and there being no punctual payment of the interest, the *glebe lot* has gone back to the town, and the *Bird lot* has gone with it.

It seems, however, that in December, 1816, after a decree of foreclosure for non-payment of interest, the town voted to reinstate *Lampson*, where he was before the decree of foreclosure, upon his paying a certain sum due for back interest, and giving a new note and mortgage. With these terms he complied on his part. And the town gave a new conveyance of the *glebe lot*, in all respects like the former, and took the new note and mortgage like the former. But in this new arrangement, the town gave back no conveyance of the *Bird lot*. And they say, and endeavor to prove, that this lot was relinquished to the town by *Lampson*, in satisfaction of the injury to the *glebe lot* by the bad husbandry of *Lampson*, decay of buildings, fences, &c. If this were so, the lot went from *Lampson* without even the appearance of any consideration. He, assuredly, could have no motive to pay the town for such injury to the *glebe lot*, when the same lot was becoming his own by the new purchase, as he, and, probably, they supposed. It is probable the town might insist upon this, as their legal right, after the first decree of foreclosure, and as equitable, while they retained the *glebe lot* in its state of depreciation, through his fault.

But, that *Lampson* should agree thus to abandon the *Bird lot* to the town, for the injury to the *glebe lot*, at the very moment, when, by his renewed purchase of the *glebe lot*, he must himself sustain the same injury, is not easily credited. If he did so, it would be strong evidence of such incapacity in him, and such an over-reach on the part of the town, as would nearly or quite, of itself, entitle him to some relief.

But, the vote of the town, shown by the record, entitled *Lampson*, on making certain payments, and giving a new note and mort-

Addison,
January,
1829.

Lampson et al.
vs.
New-Haven.

gage, which have been done by him, to be re-instated in his for-
mer position. This necessarily included the conveyance back
to him of the *Bird lot*, and his mortgaging the same, with the
*glebe lot*, to secure the payments to the town. He did so mort-
gage back to the town; and their receiving such mortgage-deed
makes it a declaration of their trust, that they held the same in trust
for *Lampson*, and now have no lien upon it, except as security
for the payments by *Lampson*, according to the terms of the deed.

It is obvious, that this new arrangement, this re-purchase, was
all upon the mistaken notion of a power in the select-men to
make a sale of this *glebe lot*. They, probably, and, at all events,
*Lampson*, had not then discovered this want of power. He sup-
posed he was in the way to obtain a good title ; while that which
he obtained is so entirely void that the town could hold the land
after he should have fully paid for it : and his only remedy would
be in chancery, to have his payment decreed back to him, or a
proper lease to be given, on such terms as should be equitable.

We entertain no doubt but that, upon the equity of the whole
case, the orators are entitled to a decree. The power of this
court to grant relief was settled in the over-ruling a demurrer to
this bill, at some prior term of this court.

There is some difficulty in fixing upon the precise terms of a de-
cree that will do the best justice in the case. We must act upon the
supposition, that there has been no intentional fraud, but that all
the proceedings have been founded on a mistake of the powers
of the select-men : and he, as well as they, might have taken bet-
ter advice, and proceeded with more perfect regularity.

The case requires the intervention of Commissioners, to take
and report an account of sundry matters to be described in their
commission, before a final decree can be perfected. Of course,
the cause must lie over to the next term, for that account to come
in. The Commissioners must report,

1st. What amount the town have received of *Lampson* and
*Barnum* for rents, and the dates of such reception.

2d. The amount and value of the rents and profits, received by
the town on both lots, while in their possession, and the dates of
such reception.

3d. Describe the dilapidations on the *glebe lot*, done by *Lamp-
son*, and when done ; and report the cost to repair the same.

4th. What would have been a reasonable rent for the *glebe lot*,
each year, while occupied by *Lampson* and *Barnum*, and the
number of years, and the amount.

5th. What sum would have made a reasonable repair of the
fences upon the *glebe lot*, when the town regained possession of
the same.

*ADDISON, January, 1829.*

*Lampson et al. vs. New-Haven.*

6th. The present value of the repairs, made by said town, on each of said lots, while they have held the possession of the same.

Let the Report bring together the several amounts, strike the balance, casting interest down to the next term of this court.

The decree final then to be perfected, is as follows: That on the payment or tender by said *Barnum* to said town of any balance then due them upon the whole premises, they shall have their election to execute to said *Barnum*, his heirs and assigns, a perpetual lease of said *glebe lot*, reserving a reasonable annual rent, with the right to re-enter for the non-payment of such rent, or for waste commited ; such rent to be agreed upon by the parties, or decreed by this Court; or, on failure of said town to give such lease, that they, on receiving from said *Barnum* an acquitance of all their liabilities on said old lease or conveyance, hold said *glebe lot* under their own controul, as though said conveyance had never been made. And that, in either case, said town give up said note of $1500 to be cancelled; and by a proper deed of conveyance, quit to said *Barnum*, his heirs and assigns, all the right of said town to the said *Bird lot* acquired by either of said mortgage-deeds, or by said judgments and decrees of foreclosure : and, in case the balance of the account, now directed, shall be against said town, that they pay such balance to said *Barnum;* and that there be a perpetual injunction upon said town against their ever using said note or said mortgage-deeds, or said judgments, or said decrees of foreclosure, or any of them, as evidence in their behalf, in any court of law or equity ; and that said town pay to said *Barnum* the costs of this suit.

*Hawley* and *Bates*, for the orators.

*Phelps*, for the respondents.