Essex,
March,
1836.

### Azarias Williams vs. Samuel Goddard.

A town charter reserved " lands to the amount of one right to be and remain for the purpose of settlement of a minister and ministers of the gospel in said town forever." And directed that this right, and those reserved for the support of schools, and of social worship,—" together with their improvements, rights, rents, profits, dues and interests, shall remain unalienably appropriated to the uses and purposes for which they are respectively assigned, and be under the charge, direction, and disposal of the inhabitants of said township forever." *Held*, that said right did not vest absolutely in the minister first settled in said town; and therefore, that he could not convey it in fee to a third person.

This was an action of covenant. The declaration counted on the covenant of seisin, and the covenant against incumbrances, contained in the defendant's deed to the plaintiff of a tract of land in Concord. Plea, that the defendant was well seized according to the terms of his covenant, and that the premises were free from incumbrance. The plea was traversed and issue joined.

It appeared, at the trial, that the land described in the defendant's deed to the plaintiff, was part of the ministerial right in Concord, of which the defendant, at the time of executing said deed, claimed to be the absolute owner, as the first settled minister in said town. The evidence showed that previous to the execution of said deed, the defendant was ordained and permanently settled, as pastor of the Congregational Church in Concord, being the first minister ever settled there. It also appeared that the town, by their corporate votes, and through the agency of a committee appointed for that purpose, co-operated with the church in settling the defendant, and voted that he should have the right of land aforesaid, subject to a condition mutually understood and assented to, that he should re-convey a portion of it in a certain event. At the time of executing said deed, and long after, the defendant continued to discharge the duties of a minister under said settlement.

The charter of Concord has a reservation of the usual number of public rights, and in reference to the right in question is worded as follows :—" Lands to the amount of one right to be and remain for the purpose of settlement of a minister and ministers of the gospel in said town forever." And it is declared that this right, as likewise the right for common schools, and for the social worship of God, " together with their improvements, rights, rents, profits, dues and interests, shall remain ;unalienably appropriated to the uses and purposes for which they are respectively assigned, and be under the charge, direction, and disposal of the inhabitants of said township forever."

Essex,
March,
1836.
Williams
vs.
Goddard.

The county court instructed the jury, that upon these facts the defendant had not supported the issue on his part, and that the plaintiff was entitled to recover. A virdict and judgment thereupon passed for the plaintiff, and the cause came into this court on exceptions taken by the defendant.

*W. & J. Mattocks for defendant.*—It is presumed there will be no dispute that the evidence proves the defendant the first settled minister in Concord.

The plaintiff declares that defendant sold to him the right "*granted and reserved to the first settled minister.*"—The evidence proves the defendant such.

How then can the plaintiff be permitted, contrary to his own averment, to say that the defendant took no title ; or to raise a question as to what title the defendant took?

The defendant took an ostensible title, and conveyed it to the plaintiff. No person, or set of men, can call in question the plaintiff's title, except the town of Concord : they settled him, and voted him the right.

Towns are not bound to act by common seal : they can act by vote.—*4th School District of Rumford* vs. *Wood*, 13 Mass. 199. —Fonblanque, 243, note.—1 Salk. 192.

The town is estopped from saying they had and conveyed no title.—*Stevens* vs. *Stevens*, 16 John. R. 115—2 Jacob's L. Dic. 439, 441—5 Dana, 381-2—4 Bacon, 107, &c.—14 Mass. R. 241—2 Tyler's R. 420, *Brown et al.* vs. *Graham.*

Again : If the charter gives the right to the first settled minister, he takes it by *a due settlement*, without any express vote of the town.

We contend that the first clause is virtually a grant to the first settled minister. At the date of the charter, (1781,) there were no statutes on the subject. The word *settlement* and the *whole* is to be construed according to the *then* state of society and object in view. The New England custom to settle ministers by towns, and for life, is well known. The object and intent were to give the land to encourage and help support a minister when the people were few and poor, to make a farm, or exchange for one. In most cases, the land was in a state of nature, and of trifling value. It would have been mockery to offer a minister the *use* of a wild lot during his *stay*, as an inducement to settle. Here is one right for *use* of a college—one for *use* of county grammar school, to be under the *control and disposal* of the legislature—one for *support* of

Essex,
March,
1836.

Williams
vs.
Goddard.

social worship, &c.—one for *support* of English schools—one for settlement of minister, &c.

From the very terms and language, the four first are to raise permanent funds or assistance to support *institutions* or objects.

The last to support a man or more by designation, in a particular situation and temporary.

On the plaintiff's narrow construction, that the town or minister could only take or control the *rents and profits*, in many cases, the right would be worth nothing to *them* or *him*. Suppose it worth nothing for agriculture, but valuable for timber, with privileges or minerals, they or he could not sell or convey the fee ; and it would be worth nothing to *either*.

The clause, " together with their improvements," &c. was introduced to apply to gospel and English school rights, but not to *this* right, unless the town think proper to rent it.

Take another view : This case is unlike any known action of the kind. In common actions of *this* description, if defendant does not show title in himself, the law presumes it in some person unknown.

As this right could never be forfeited for taxes, and no one could dispose of it but the town, or this defendant, here can be no such presumption.

We show a *prima facie* title : if there is a better, the plaintiff must show it.

If the town is not strictly estopped, after their acquiescence of 23 years, a court of equity would *enjoin* them against any suit to recover.

And *this* court will be justified in deciding on this principle.

The ordinary reason for a recovery, to wit, the danger of being ousted by a better title, does not apply.

Let the plaintiff recover, he gets his money, and to a *moral* certainty, forever keeps the land.

Contemporaries are better expositors of their instruments than after generations.

Arguments from the general understanding of all concerned, and all community for more than half a century, and practice in perhaps more than fifty like cases, are unanswerable, and equal in reason to judicial decisions, at this late period. But we have one decision in point as to this right, and more against us.—It is this same, *Williams* vs. *Barker and Hardy*, Essex County September Term, 1821.

Does he come here to defeat his own title, thus established ?

Essex,
*March*,
1836.

Williams
*vs.*
Goddard.

It is presumed that decision was founded more on the practical construction of community, than a strict techical construction of the charter.

In all such strong cases, courts have waived *strict law*, to prevent gross injustice, and to avoid disturbing great interests or concerns.

Witness the great landed estate acquired under an illegal vendue of 1797, which the supreme court supported ; to wit, Ives' vendue.—4 N. H. R. 20—2 do. 510.

*Hibbard & Fletcher for plaintiff.*—The only question submitted arises upon the construction of that clause of the charter of Concord, reserving a portion of the lands therein granted for pious and charitable uses, creating the trust, and directing its use. If the select men of Concord, the church, and town, could pass an interest in fee, and vest it in the defendant, the charge is erroneous. But if no fee passed and existed by defendant's deed, the judgment will be affirmed.

The lands in question are, and ever have been, wild, unoccupied and uncultivated. No actual possession was ever taken by the defendant, or by any person under him, under defendant's claim of title. The seisin, if any, was a seisin in law, and the question resolves itself into a seisin in fee of fee simple, with lawful right to sell and convey, according to the words of the covenant in the deed. This depends upon the interest the inhabitants of the town had in the land, and the right they and the church at Concord had to pass this interest to the defendant.

What interest had the inhabitants of Concord in the lands in question ? Was it an interest in fee simple, and had they lawful authority to sell and convey the same, in manner and form as set forth by the bill of exceptions ? This depends upon the construction of the charter of the town. If that grant gives to the inhabitants of the town an estate in fee simple, and the inhabitants were vested with the power to pass so high an estate, and have passed such an estate to the defendant, the covenant of the defendant's deed declared upon is not broken. But if a less estate than an estate of fee simple is granted by charter to the inhabitants of the town, if the power to sell and convey be circumscribed and controlled, and if a less estate is vested in the defendant by the doings of the inhabitants and the church, no estate in fee simple could vest in the plaintiff by defendant's deed, and the covenant of seisin was broken as soon as made.

ESSEX,
*March,*
1836.

Williams
*vs.*
Goddard.

Lord Coke says, that a tenant in fee simple is he who hath lands and tenements to hold to him and his heirs forever. That a *fee* is an estate of inheritance, and *simple* is lawful and pure. That the term *heirs* creates the inheritance. That it is simply without restraint.—That it excludes both conditions and limitations.—1 Coke sec. 1, and n. 4.

Chancellor Kent says, that a fee simple is a pure inheritance, clear of any qualification or condition.—4 Kent's Com. 5.

Towns are *quasi* corporations, aggregate or politique, for certain purposes. As such they may purchase and hold lands. A grant of lands to the inhabitants of a county (of course to the inhabitants of a town) creates them a corporation for that single intent. Corporations may be made trustees for charitable purposes, not inconsistent with their institution. They are competent to perform the duties of such trust, and are safe depositories thereof.— 2 Kent's Com. 224-5-6.

Courts of Chancery have sole jurisdiction of trusts, unless taken away by charter. The trust cannot be disposed of without the chancellor's order. If the powers of the trustees be restricted by charter they cannot be enlarged by the chancellor's order.—2 Kent's Com. 227-8-30-31. The charter, after enumerating the other grants, declares,—— which, together with the five following rights reserved to the several uses in the manner following, include the whole of said township, to wit:

1. One right for the use of a seminary or college.

2. One right for the use of a county grammar school in said state.

3. *Lands to the amount of one right to be and remain, for the purpose of settlement of a minister and ministers of the gospel in said town forever.*

4. Lands to the amount of one right for the support of the social worship of God in that township.

5. And lands to the amount of one right for the support of an English school or schools in said township.

Which said two rights for the use of a seminary or college, and for the use of a county grammar school or schools, and the improvements, rents, interests, and profits arising therefrom, shall be under the control, order, direction, and disposal of the General Assembly of said state forever.

*Which said lands amounting to the three rights last mentioned, when located, shall, together with the improvements, rights, rents, profits, dues and interests, remain unalienably appropriated to the*

*uses and purposes for which they are respectively assigned, and be under the charge, direction and disposal of the inhabitants of said township forever.*

Essex,
March,
1836.
Williams
vs.
Goddard.

The charter here raises the fund—appoints the trust, and designates the uses. Two of the public lots, the college right and the grammar school right, are under the control, order, direction and disposal of the General Assembly of this state forever. The other three rights are for the settlement of a minister or ministers of the gospel—one for the support of the social worship of God, and one for the support of an English school, together with their improvements, rights, rents, profits, dues and interests, shall remain *unalienably* appropriated to the uses and purposes for which they were assigned, and shall be under the direction, and disposal of the inhabitants of said township forever.

The object of this grant is not left to intendment, inference, or construction. The language is too plain to be misunderstood. It is positive, directory and prohibitory, excluding all argument. It directly raises the trust—directs its use, and prohibits its direction to any other purpose.

The language of the charter is, for the settlement of a minister and ministers, in the singular and plural both. The very language creating a succession and continuation, and perpetuating the use.— If it were for the settlement of a minister, it might admit possibly of a different construction, founded upon the rule that when the end for which the trust was raised was attained, the trust ceased.— But even then the funds would lapse and revert to the donor. But here it is plain that upon the settlement of a minister, the trust is not accomplished—is not ended ; for the term ' *and ministers*' continues it, and that connected with the term '*and that forever*' puts it beyond doubt.

But not only the right of land, but the improvements, rights, rents, profits, dues, and interests are a portion of the trust-fund in contemplation. This is not the language of a grant in fee. This would be to the inhabitants of said township, their successors and assigns forever. It is most obvious if these lands can be alienated, the trust is entirely defeated. But upon this point, the charter is explicit.

The land, and all its accidents, should remain for the purpose of settlement of a minister and ministers of the gospel *forever*.

These purposes are charitable, and for these purposes the inhabitants of the town may be made trustees; for it is not inconsistent

Essex,
*March,*
1836.
————
Williams
*vs*
Goddard.

with their institutions as a body politic or corporate. They are competent to discharge this trust, and may be safe deposits thereof.

The inhabitants may lawfully appropriate the rents, profits, &c. for the uses and purposes declared by charter, and for no other.—They can never *alienate* the trust, for that is declared to be *unalienable,* and an attempt so to do would not only be a violation of the trust duty, but fraudulent and void.

The inhabitants of Concord by charter took no interest in fee in this right of land. They could pass none to Goddard, and no right in fee simple vested by his deed in Williams.

If, at the time of executing his deed to Williams, Goddard had not a title in fee simple to the lands purporting to be conveyed, the covenant of seisin was broken upon delivery of the deed, and the plea in bar cannot be supported.—1 D. Chip. *Bush* vs. *Whitney,* 369.—2 Vt. R. *Samson et al* vs. *New-Haven,* 14.—Stat. 197.

The opinion of the court was delivered by

Royce, J.—It is only necessary to consider the first covenant declared on. In this the defendant covenants—"that he is well seised of an indefeasable estate in fee simple." The terms of this covenant necessarily import that he had an absolute estate in fee; and to make good his defence, he was therefore required to establish such a title in himself.—*Gorfield* vs. *Williams,* 2 Vt. R. 327.—*Catlin* vs. *Hurlburt,* 3 Vt. R. 403. He was the first minister of the Gospel ever permanently settled in Concord, and no objection is made to the validity of his settlement. The proceedings of the inhabitants of the town sufficiently indicate their intention, that he should receive the right of land in question as an absolute estate in fee. There was indeed a stipulation on his part to re-convey a portion of it in a certain event, but that has no effect upon this case. The whole question must therefore turn on the manner in which this right is granted or reserved in the Town Charter. If it could vest absolutely in the defendant on his being settled, it certainly did so, and his covenant is satisfied: and if it could not so vest, the covenant was at once broken.

There is a diversity in these grants or reservations. In some charters the right is simply reserved for the first settled minister in the town. In others it is reserved for the first settled minister, to be disposed of for that purpose as the inhabitants of the town shall direct. Thus far the land is evidently destined, upon a legal and sufficient settlement of a minister, to vest absolutely in such minister as private property. And whether in each class of reserva-

Fssex,
March,
1836
Williams
vs.
Goddard.

tions alike, or only in the latter class, it is still requisite that the inhabitants of the town, in their corporate capacity, should in any sense become parties to the settlement, we have no occasion to decide.—See *Sheldon* vs. *Goodsel*, 1 Aik. 225.—*Dow* vs. *Hinesburgh and Weed*, 2 Aik. 18.—*Charleston* vs. *Allen*, 6 Vt. R. 633. The terms of the charter in this instance are different {still. The right in question is " to be and remain for the purpose of settlement of a minister and ministers of the gospel in said town forever." And it is provided that this right, as likewise those reserved for the support of common schools, and of social worship, " together with their improvements, rights, rents, profits, dues and interests, shall remain unalienably appropriated to the uses and purposes for which they are respectively assigned, and be under the charge, direction, and disposal of the inhabitants of said township forever." This reservation does not purport to be for the settlement of one minister only, but of a minister *and ministers*, which would include a succession of settled ministers. And that this succession was intended is quite evident, from the terms of perpetuity repeatedly applied to the use, from the perpetual charge and control conferred upon the town, and from the restraint of alienation which is stamped upon the property. The terms employed to direct and secure the application of this property to the purposes expressed, are applied with the like view to two other rights; and these were never understood to be temporary reservations, or capable of being diverted from the objects designated. In short, the language of the charter in reference to this right seems to forbid the supposition, that the estate was to become absolute in the minister settled.

In this view of the case, the members of the court now present are well agreed. But as the court, consisting in part of other members, differed in opinion on a former argument, and as the case of *Williams* (the present plaintiff) vs. *Hardy and Barker*, determined in A. D. 1821, may have involved a contrary decision, some further attention to the subject is required. The record of the case referred to, shows it to have been an action of trespass, in which the plaintiff recovered for trespasses committed on the land in question. It is to be inferred that he had no actual possession of the land, but relied on constructive possession arising from title; and it appears that he made title through the deed of this defendant. The charter of Concord and the defendant's settlement were brought into consideration. The question now discussed might therefore have been determined in that case. But the de-

Essex,
March,
1836.

Williams
vs.
Goddard.

cision may as probably have proceeded on a narrower ground, considering the defendant (who then lived in Concord under his settlement) entitled to the possession and enjoyment of the land for the time being, and competent to pass that right by his deed to the plaintiff. As the case has never been reported, and the grounds of decision are consequently unknown, it is not decisive of the whole question now presented. A case is also cited for the defendant from the 2 N. H. R. 510, and another from the 4 N. H. R. 20, showing that in that state the rights reserved by charter for the support of the ministry, and for the support of schools, are regarded simply as appropriations in aid of the respective towns, and subject to their unqualified control and disposition. It was therefore held that those lands might be sold, and converted into other funds, at the discretion of the town. This is directly in conflict with the doctrine uniformly supported and enforced in this state.— *Bush* vs. *Whitney*, 1 Chip. R. 369.—*Lampson and Barnum* vs. *New-Haven*, 2 Vt. R. 14. The uses of such reservations are considered as unalterably fixed by the charter, though subject to legislative regulation as to the manner of their enjoyment. And it was adjudged in the case last cited, that the rents and profits to accrue at a distant future period could not be received in advance; since this might defeat the intended benefit to the future generations who may inhabit the town. In our view, the terms of this charter have rendered all these principles conclusively applicable to the present case.

But it is urged, that the course pursued in this instance has been extensively practiced in the state, and ought on principles of policy to be sanctioned. We are not aware of the extent of the practice, but have reason to believe it has not been uniform. The legal construction should therefore prevail.

Judgment of county court affirmed.