---

*Twenty-first Judicial District.*
THE COMTH. OF PENNA. *ex rel.* SARAH JORDAN
*v.* ALBERTINE BIGELOW.

## In the Court of Common Pleas of Schuylkill County.

When the father is dead and the mother an unsuitable person to take charge of her children, the court will appoint a guardian for that purpose, and such guardian can retain the legal custody of the children as against the mother.

**Habeas Corpus.**

Opinion delivered September 3, 1873, by

WALKER, J. This is a habeas corpus issued at the instance of Sarah Jordan, to obtain the custody of her two children, Louis, aged eleven years, and Frederick, aged eight years. On the 4th of August, 1873, a petition was presented to the orphans' court of this county by a friend of the children, setting forth that they had no suitable person to take charge of their persons, and praying the court to appoint a guardian for them. Whereupon the court appointed J. A. M. Passmore, esq., guardian.

Mr. Passmore took possession of the children, and removed them to the Benevolent Association's Home for Children. This writ was taken out for the purpose of restoring the children. The respondent is the matron of the institution, and in every way qualified to take charge of children, and the return sets forth that they are not under restraint further than is necessary for their education and bringing up. The evidence shows that the relator is totally unfit to have the care of her children, and that she is a person of disreputable character, well known to the police and notorious to the public. As the mother of these boys she invokes our power to obtain their legal custody. That right is undoubted where the

parent is a suitable person and worthy of the charge. 5 East. 221 ; 10 Vesey, jr., 58 61. Though the rigor of the ancient Roman law has been restrained by subsequent British statutes, and softened by our own enactments, that authority still exists and must be recognized by the judiciary. Where the unfitness of the parent is shown, the power of the court to withhold the restoration of the children cannot be questioned. Com. *v.* Nutt, 1 Browne 143. I will not call to my help a multiplicity of authorities, or invoke the aid of forensic logic on a subject so just and reasonable. It rests upon law and common sense to be exercised through the inherent equities of the courts for the welfare of the infants and the security of the public. 1 Blackstone Com. (Sharswood), vol. 1, pp. 452 and notes. The institution in which these boys are at present, was chartered by the court for benevolent purposes, and its object and design are to provide a suitable home for destitute and unfortunate children of tender years, where, without expense to their parents, they are fed, clothed, and properly educated. Moral and religious culture is part of the discipline.

It is maintained wholly by voluntary contributions, and it is a benevolent and christian—not sectarian—institution, in the most comprehensive signification. We cannot express our recommendation of its design and discipline too strongly. These being the facts, to remand these infants to their parent would be to take them from this home and place them in the way of temptation and vice. Under the rules and regulations of the "Home," the parents are allowed to see their children at certain times and on proper occasions, and if the relator should change her manner of living, there is nothing to hinder her from again having her children. But while they are at the "Home," they are beyond her influence and control. The sooner parents in like situation understand that they have no legal right to interfere with them, the better it will be for the children and the community. *All such acts will be considered transgressive.*

We have spoken of this institution, its design, its management, and its discipline. A few words upon the persons who projected this christian charity. The list of its members includes some of our most prominent and useful citizens, both male and female. The sole object of the managers, through difficulties and embarrassments, without compensation or expectation of pecuniary reward, is to perfect and continue its usefulness. These benevolent men and women are actuated by the highest considerations.

They understand wisely and well that prevention of evil is more desirable than reformation, and innocence and virtue inconceivably better than contrition and repentance. *Their action meets with our highest encomium.*

My colleagues and myself feel that they are an efficient auxiliary to our power, in checking the progress of crime and promoting reform. *I can pay them no higher tribute.* They will receive their recompense.

Prudence, wisdom, and law alike dictate but one course. · We cannot hesitate in a matter so plain, and must therefore refuse this application.

John A. Nash and Walter Heilner, Esqs., appeared for relator, and B. Bryson McCool for respondent, and cited. 3 sec. act of 4th May, 1855. Purdon's Digest, 1008 pl. 25 ; · Commonwealth *v.* Smith, 1 Brewster, 547 ; Commonwealth *v.* Barney, 4 Brewster, 408 ; 10 Vesey, Jr., 58-61 ; ·Commonwealth *v.* Nutt, 1 Browne, 143 ; United States *v.* Green, 3 Mason, 482 ; Commonwealth *v.* Addich, 2 S. & R., 174; Matter of Pottman, 2 Hill, S. C., 363 ; the State *v.* Paine, 4 Humph, 523 ; *exparte* Schumpert, ·6 Rich, 344; Smith petitioner, 13 Illinois, 138.