TRUSTEES OF CALEDONIA COUNTY GRAMMAR SCHOOL *v.* S. BLANCHE KENT.

November Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, and HASELTON, JJ.

Opinion filed July 4, 1912.

*Schools—School Lands—Right to Convey in Fee—Conveyance in Fee and Perpetual Lease—Void Deeds—License to Enter —Assignments—Construction of Statutes—Special Verdicts —Conflict with General Verdict—Ejectment—Parties—Adverse Possession—Property Subject to—Statute of Limitations—Lands Held for Public Use.*

Under a statute appointing designated persons trustees of a grammar school, making them and their successors a corporation, and empowering it "to hold and lease" lands granted to it for the use and benefit of the school, the trustees were not empowered to convey such lands in fee.

It is essential to a lease that there be a reservation of a reversion in the grantor, and so, where the grantor parts with his whole estate, the instrument is not a lease, but an assignment.

An instrument purporting to be a perpetual lease of described land in consideration of the advanced payment of a designated sum of money in full of all future rent is a conveyance in fee, and not a lease.

A statute authorizing the trustees of a school "to hold and lease" the school's lands for its benefit contemplates that the lands should be so leased as to result in a yearly income therefrom for use in

support of the school, and so a perpetual lease of such lands in consideration of a sum of money paid in advance in full of all future rent is void as defeating the legislative intent.

A thing that is within the intention of the makers of a statute, although not within the letter, is as much within the statute as if it were within the letter.

To effectuate the intention of the Legislature the language of a statute may be enlarged or restrained, the limitation of the rule being that, to extend the meaning to any case not included in the words, the case must come within the same reason upon which the Legislature proceeded, and not merely within a like reason.

Though a void conveyance of real estate may operate as a license to enter, if the conveyance is wholly void, so that such resulting license to enter is not coupled with any grant, that license is revocable, regardless of whether a consideration was paid for the void conveyance.

A mere license to enter is a privilege personal to the licensees, terminates with their death, and is not assignable.

The death of one of two licensees to enter does not, as matter of law, revoke the license.

Lands granted by the Legislature to be held and leased for the benefit of a school are granted and held for a public use, and hence the Statute of Limitations will not run against the right of the grantee to recover the lands from one holding under a void conveyance.

Where the special findings of a jury are consistent with each other but irreconcilably inconsistent with the general verdict, this falls and those control.

Where a statute appointed designated persons trustees of a school, made them and their successors a corporation, and empowered it "to hold and lease" lands granted to it for the use and benefit of the school, the right to maintain ejectment against parties in possession of such lands under a void conveyance is in such corporation, and not in the State.

It appearing that defendant had judgment below on verdicts showing that plaintiff was entitled to prevail, but that plaintiff's damages were not assessed, the case is remanded on that question only.

One cannot by adverse possession acquire title to lands that he holds under a perpetual lease.

EJECTMENT. Plea, the general issue. Trial by jury at the December Term, 1910. Caledonia County, *Butler,* J., presiding.

General verdict for defendant, and special findings as recited in the opinion. After verdict, and before judgment, the plaintiff moved for a judgment in its favor, notwithstanding the verdict, for the following reasons:

"1. The contract, right, or interest claimed by defendant in the lot in suit, and which her evidence tended to show was acquired by Holton & Judevine from the plaintiff, on which she based her title, could legally be but a leasehold subject to the usual covenants, including that to pay periodical rents. There was no showing that it was ever the intention of Holton & Judevine and the plaintiff to create the substantial relation of landlord and tenant between themselves, but on the contrary, defendant's evidence tended to show that such intention was to convey and receive an absolute title in fee simple.

2. The defendant could not acquire in the premises other than a leasehold title in any manner whatsoever. The perpetual lease, which the jury find by special verdict number four, under instructions of the court, is a conveyance without reservation of rents, the prime essential of leasehold estates, with all charges settled upon delivery of the conveyance, in advance, and it is therefore title in fee and void.

3. The defendant has repudiated leasehold estate in the premises by taking conveyance and claiming title in fee simple and denying any right in the premises to plaintiff, thereby completely ousting the plaintiff; she therefore avoids and annuls any and all leasehold licenses or other right she may in any possible manner have acquired and under which she may rightfully have entered and she is entitled to no demand of rent, notice to quit, or any other right plaintiff is bound to respect, relative to her possession or occupancy of the premises; ejectment is plaintiff's proper remedy and the judgment should be for plaintiff, regardless of special verdict number four and the general verdict.

4. Defendant set up claim of independent title to the lot and denied that the plaintiff ever had any right in it. This estops her from a leasehold estate, prescriptively or otherwise derived from the plaintiff, and the jury having found the lot granted, and assigned to plaintiff, verdict and judgment for defendant is unwarranted, but should be for plaintiff.

5. There was no evidence of fifteen years or more of occupancy of said lot sufficient to constitute the basis upon which lease may be presumed.

6. Neither the defendant, nor those under whom she claimed title, ever paid rent.''

Motion overruled, and judgment for the defendant, to which the plaintiff excepted. The opinion states the case. This case has been once before in the Supreme Court, see 84 Vt. 1.

WATSON, J. This case is here now for the second time on exceptions saved by the plaintiff in a trial by jury, and we may refer to the opinion before written (84 Vt. 1, 77 Atl. 877) for a statement of the facts, except such as were new or more particularly developed or established at the last trial.

The defendant stood on the general issue, and claimed there was no evidence tending to show that the lot in question (Lot No. 10, Range 18, Division 3, of lands in the town of Hardwick) was ever assigned to the plaintiff, as required by the charter of the town, but that if it had been so assigned the plaintiff had executed to the defendant's grantors such a contract or lease as it had a right to give, and that the defendant was in rightful possession under the same. Many exceptions were taken by the plaintiff to rulings on questions of evidence, to the failure of the court to charge as requested, and to the charge given. But the view we take of the case enables us to dispose of it on the exceptions to the overruling of the plaintiff's motion for judgment in its favor, notwithstanding the verdict.

In submitting the case for a general verdict, the court also submitted to the jury four special questions for findings in answer thereto, the second not to be answered in case the first should be answered in the affirmative, as it was. The general verdict was for the defendant. Special questions 1, 3, and 4, with the answers of the jury, were as follows: Question 1. ''Was Lot No. 10, in the 18th Range, 3d Division, located by the town of Hardwick as a Grammar School Lot, as provided by the town charter?'' Answer, ''Yes.'' Question 3. ''Were the Trustees of the Caledonia County Grammar School fully compensated for all the land granted to them for county grammar schools in the lots located and set apart in the 1st and 2d Divisions?'' Answer, ''No.'' Question 4. ''Does defendant hold possession of Lot No. 10, in the 18th Range, 3d Division of lots, town of

Hardwick, under and by virtue of a perpetual lease from plaintiff to her grantors?"    Answer, "Yes."

After verdict and before judgment, the plaintiff moved for judgment in its favor notwithstanding the verdict, for seven different reasons stated, the third of which was: "The defendant could not acquire in the premises other than a leasehold title in any manner whatsoever.    The perpetual lease, which the jury find by special verdict [finding] number four, under instruction of the court, is a conveyance without reservation of rents, the prime essential of leasehold estates, with all charges settled upon delivery of the conveyance, in advance, and it is therefore title in fee and void."    The motion upon this ground was in substance for a judgment in plaintiff's favor on the special findings.

By special findings 1 and 3, it was established, contrary to defendant's contention before the jury, that the lot in dispute was located to the plaintiff by the original proprietors, and that the plaintiff was not fully compensated under the "quantity for quality" clause of the town charter for all the land granted to it by the lots located to its right in the first and second divisions. With these facts established, the effect of special finding No. 4, is of vital consequence.

The defendant's evidence tended to show that by a perpetual lease the plaintiff leased the lot in question to her grantors Holton & Judevine as early as 1847, and that they paid for such lease one hundred dollars as commuted rent.    The court instructed the jury to consider, in answering the fourth special question, whether the one hundred dollars, the payment of which defendant's evidence tended to show, was applied on this grammar school lot contract, and if it was rent, whether the defendant went into possession under such contract.    Construing that question and the affirmative answer thereto in the light of the charge, the finding is, that the defendant holds possession of the lot in dispute under and by virtue of a perpetual lease from the plaintiff to the defendant's grantors, one hundred dollars being paid by the latter therefor in lieu of successive payments of rent at the end of regular stated periods during all future time.    The plaintiff contends, that such a contract was not a lease within its power to execute; but was an ineffectual sale of the land and void.

Under the Act of 1795, by which the persons named therein were appointed Trustees of the County Grammar School in the County of Caledonia (located at Peacham), and with their successors made an aggregate corporation under the name of the "Trustees of Caledonia County Grammar School," lands were granted thereto as follows: "and the said Trustees are hereby fully authorized and empowered to hold and lease the lands lying within said county, granted for the use and benefit of a County Grammar School, with such donations in land or other property, as may hereafter, in any wise, be made for the use and benefit of said institution." The lot in question having been located by the town in which it is situated as a grammar school lot under the provisions of the town charter, the plaintiff was authorized and empowered "to hold and lease" the land for the use and benefit of the County Grammar School (this same case, 84 Vt. 1, 77 Atl. 877); but this was the extent of its power. It was not authorized or empowered to convey the fee, nor the whole interest and estate of the County Grammar Schoool therein. By the express terms of the grant the plaintiff was to *hold* the lands, as well as to lease them. The question then is, What was the legal effect of the so-called perpetual lease to Holton & Judevine in consideration of the payment by them of a single sum as the rent for all future time?

By such conveyance, if valid, the grantees took a right over a determinate thing, indefinite in point of user, unrestricted in point of disposition, and unlimited in point of duration, which elements, says Mr. Austin, denote property in its strict sense. 2 Aus. Jur. 5th ed. 790. Professor Holland adopts this definition, and says it is difficult to do more to describe the right of ownership unlimited only in comparison with the rights of others over objects in accordance with the maxim, *sic utere tuo ut alieum non laedas.* Hol. Jur. 10th ed. 199-200. Chancellor Kent says a fee-simple "is an estate of perpetuity, and confers an unlimited power of alienation, and no person is capable of having a greater estate or interest in land." 4 Kent's Com. (11th ed.) 4. It is said in Bacon's Abr. Tit. Leases and Terms for Years, that it is essential to a lease, that there be a reservation of a reversion in the grantor; for if the whole estate and interest which the grantor has, be parted with, the instrument is not a lease, but an assignment. That the very name of lease imparts a separation, a detachment of a part from the whole.

To the same effect, is Sheppard's Touchstone, 266. Blackstone, noticing this distinction, says: "An assignment is properly a transfer, or making over to another, of the right one has in *any* estate; * * *. And it differs from a lease only in this: that by a lease one grants an interest less than his own, reserving to himself a reversion; in assignments he parts with the whole property, and the assignee stands to all intents and purposes in the place of the assignor." 2 Black. Com. 326; *Passaic, etc. Bridge Proprietors* v. *State*, 21 N. J. L. 384. In *Stevens* v. *Dewing*, 2 Vt. 411, the plaintiff claimed the land by virtue of a lease from one Adams Stevens to him, to run as long as wood grows and water runs; the plaintiff to support said Stevens and his wife during their lives. In determining the character of this conveyance, the court said the term "as long as wood grows and water runs" rendered it perpetual; that the matters to be performed by the plaintiff were to continue only during the life of the grantor and his wife; that it conveyed a fee in the use, liable to be defeated during the life of Adams and his wife, by a failure on the part of the plaintiff to perform the conditions, on his part to be performed; but after that, the title would be absolute in the plaintiff and his heirs and assigns forever. It may well be considered, whether it does not logically follow from the holdings in that case, that had the rent been payable in money, and paid on the delivery of the instrument in one sum to cover all future time, the legal effect would have been to convey an absolute title concurrently therewith. On the foregoing authorities it is clear, that the so-called perpetual lease from the plaintiff to *Holden* v. *Judevine,* instead of being a lease, was in law an attempted conveyance in fee, and as a conveyance of such public lands it was void. *Capen's Admr.* v. *Sheldon,* 78 Vt. 39, 61 Atl. 864; *Bush* v. *Whitney,* 1 D. Chip. 369; *Lampson* v. *New Haven,* 2 Vt. 14; *Williams* v. *Goddard,* 8 Vt. 492; *White* v. *Fuller,* 38 Vt. 193. See also *Propagation Society* v. *Sharon,* 28 Vt. 603.

It is argued, however, that inasmuch as the plaintiff, by its charter, was authorized "to hold and lease" the Grammar School lands in the several towns in the county, without any expressed restriction on the power to lease, either as to length of term or amount and kind of rent, a general power is given to be exercised in the discretion of the grantee of the power. It is true, that there is no provision in the plaintiff's charter nor by

statute expressly specifying the term for which the Grammar School lands may be leased, and it was held in *White* v. *Fuller,* that a lease of such lands, reserving an annual rent, with a right of re-entry on the nonpayment of the rent or nonperformance of other conditions, was not, because perpetual in duration, outside the lessor's authority by statute to execute. It is also true, that neither the charter nor the statute in express terms requires the reservation of annual rent. Yet it is not to be supposed that the Legislature intended the execution by the trustees of such leases or pretended leases as should defeat the main object of the grant. The use and purpose for which such lands were to be held and leased show, that the grant contemplated that they be so leased as to result in a yearly income therefrom for use in the support of the County Grammar School. Such income could be realized only by a reservation of rent payable annually, and we think it manifest from the whole act that this was intended by the Legislature. A thing which is within the intention of the makers of a statute, although it be not within the letter, is as much within the statute, as if it were within the letter. *Stowell* v. *Zouch,* Plow. 366; *People* v. *Utica Ins. Co.,* 15 Johns. 358, 8 Am. Dec. 243; *Tracy* v. *Troy, etc. R. Co.,* 38 N. Y. 433, 98 Am. Dec. 54. It was said by this Court in *Simonds* v. *Estate of Powers,* 28 Vt. 354, that "the intention of the Legislature is the pole-star in construing a statute, and to effectuate such intention, the language of the Legislature may be enlarged or restrained, if necessary, and the construction should be on the whole statute." And in *United States* v. *Freeman,* 3 How. 556, 11 L. ed. 724, Mr. Justice Wayne speaking for the court, it is stated as a rule, "that the meaning of the Legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the Legislature proceeded, from the end in view, or the purpose which was designed—the limitation of the rule being, that to extend the meaning to any case not included in the words, the case must be shown to come within the same reason upon which the law-maker proceeded, and not only within a like reason."

At no time did the plaintiff, through its trustees, have a right to anticipate the future rents, or, in contemplation as we have seen, sell the lands and receive the pay therefor, to the injury of future generations equally entitled to the benefit of

the use. See *Lampson* v. *New Haven,* 2 Vt. 14; *Williams* v. *Goddard,* 8 Vt. 492.

It is further urged, that even though the instrument of conveyance from the plaintiff to Holton & Judevine be invalid as a lease, it was good as a license and authorized Holton & Judevine to enter upon the premises, and such entry held good until the license was revoked, of which and of a demand for the possession it is said there was no evidence in the case; also, that if the plaintiff executed a perpetual lease for a lump sum of money without a right, it cannot repudiate the lease and retain the consideration—it must return the latter before it can be heard to complain. These two questions are so closely related as to make it more convenient to consider them together.

Under the decisions in this State there should seem to be no doubt that such void instrument as a conveyance, may operate as a license to enter. *Lampson* v. *New Haven,* 2 Vt. 14; *White* v. *Fuller,* 38 Vt. 193; *Capen's Admr.* v. *Sheldon,* 78 Vt. 39, 61 Atl. 864. So the question here raised involves more particularly the nature of the license, its duration in the circumstances of this case, and its assignability.

Since as we have held the instrument was void as a conveyance, it must logically follow, that the license resulting therefrom was not coupled with a grant, in other words, that it was a mere license to enter, and in its nature revocable; and the fact that a consideration was paid for the pretended lease made no difference with the license in these respects. In *Thomas* v. *Sorrell,* Vaughan, 551, the question of the King's power, notwithstanding the statute 7 E. 6 cap. 5, regulating the sale of wine, to license the Vintners' Company to sell wine, was before the court. Therein considering the nature of a license and its incidents, Lord Chief Justice Vaughan said: "A dispensation or license properly passeth no interest, nor alters or transfers property in any thing, but only makes an action lawful, which without it had been unlawful. As a license to go beyond the seas, to hunt in a man's park, to come into his house, are only actions, which without license, had been unlawful. But a license to hunt in a man's park, and carry away the deer killed to his own use; to cut down a tree in a man's ground, and to carry it away the next day after to his own use, are licenses as to the acts of hunting and cutting down the tree; but as to the carrying away of the deer killed, and the tree cut down, they are grants. So

to license a man to eat my meat, or to fire the wood in my chimney to warm him by, as to the actions of eating, firing my wood and warming him, they are licenses; but it is consequent necessarily to those actions that my property be destroyed in the meat eaten, and in the wood burnt, so as in some cases by consequent and not directly, and as its effect, a dispensation or license may destroy and alter property.'' In the leading English case upon this subject, *Wood* v. *Leadbitter*, 13 M. & W. 838, 16 Eng. Rul. Cas. 49, the action was trespass for assault and false imprisonment. There the plaintiff had purchased one of the tickets, sold at one guinea each, which were understood to entitle the holder to come into the great stand, and the inclosure surrounding it, on the Doncaster racecourse, and remain there every day during the races that year. When there and while the races were going on, he was requested by the defendant, by order of Lord Eglintoun, the steward of the Doncaster racecourse, to go away. On his refusal to go, the defendant, by order of Lord Eglintoun, forced him out, without returning to him the guinea paid for the ticket, using no unnecessary violence. The plaintiff contended that he was in said close, at the time when, etc., by the leave and license of Lord Eglintoun, and by the pleadings the question of such leave and license was made the principal issue in the case. The trial court instructed the jury, that even assuming the ticket to have been sold to the plaintiff under the sanction of Lord Eglintoun, still it was lawful for the latter, without returning the guinea, and without assigning any reason therefor, to order the plaintiff to quit the inclosure, and that, if the jury were satisfied that notice was given by Lord Eglintoun to the plaintiff, requiring him to quit the ground, and that, before he was forcibly removed a reasonable time had elapsed, during which he might conveniently have gone away, then the plaintiff was not, at the time of the removal, on the place in question by leave and license. The jury returned a verdict for the defendant. A rule *nisi* was obtained to set aside the verdict for misdirection, on the ground, that under the circumstances Lord Eglintoun must be taken to have given the plaintiff leave to come into and remain in the inclosure during the races; that such leave was not revocable, at all events without returning the guinea; and so that, at the time of the removal, the plaintiff was in the inclosure by leave and license. This question was argued before Barons Parke, Alderson, and Rolfe, who

(the report states) because of the conflicting authorities cited in the argument took time to consider their judgment. It was assumed that the tickets, such as the plaintiff purchased, were issued with Lord Eglintoun's privity; also, that the plaintiff had in no respect misconducted himself; and that if he had not been requested to depart, his coming upon and remaining within the inclosure would have been justified by his purchase of the ticket. In the opinion of the court, delivered by Baron Alderson, it is said, that for the purpose of considering the nature of a license and what are its legal incidents, they cannot do better than refer to Lord Chief Justice Vaughan's elaborate judgment in *Thomas* v. *Sorrell,* as set forth above; that a mere license is revocable, but that which is called a license is often something more than a license, often comprising or being connected with a grant, and then not in general revocable by the party giving it, so as to defeat his grant to which it was incident; that a mere license under seal is as revocable as a license by parol; and on the other hand, a license by parol, coupled with a grant, is as irrevocable as a license by deed, provided only that the grant is of a nature capable of being made by parol. But when a parol license is coupled with a parol grant, or pretended grant, of something incapable of being granted otherwise than by deed, there the license is a mere license, not an incident to a valid grant, and it is therefore revocable. It was held that the license there in question was revocable, and the fact, that it had been given for a valuable consideration made no difference. Consequently that the direction given to the jury was correct, and that the rule must be discharged.

To the law thus declared by the English Court of Exchequer, our own decisions touching licenses at law are consonant. Thus, in *Lampson* v. *New Haven,* 2 Vt. 14, where the selectmen of the town had undertaken to make a sale of a glebe lot for a valuable consideration, the Court said, that though the conveyance was void, both upon principle and authority, yet it might operate as a license for Lampson to occupy, so as not to leave him a trespasser upon the town; that the selectmen probably, and, at all events, Lampson, had not discovered their want of power. "He supposed he was in a way to obtain a good title; while that which he obtained is so entirely void that the town could hold the land after he should have fully paid for it; and his only remedy would be in chancery, to have his payment decreed back

to him, or a perpetual lease to be given, on such terms as should be equitable.'' See also *Clark* v. *Glidden,* 60 Vt. 702, 15 Atl. 358.

Moreover, it being but a mere license, it was a personal privilege extending only to the persons to whom it was given, and was not assignable. *Mumford* v. *Whitney,* 15 Wend. 380, 30 Am. Dec. 60; *Ex parte Coburn,* 1 Cow. 568; *Prince* v. *Case,* 10 Conn. 375, 27 Am. Dec. 675; *Jackson* v. *Babcock,* 4 Johns. 418; *Howes* v. *Ball,* 7 Barn. & Cress. 481; *Emerson* v. *Fiske,* 6 Greenlf. 200, 19 Am. Dec. 675; *Foot* v. *New Haven, etc. R. R.,* 23 Conn. 214; *Carleton* v. *Redington,* 1 Foster, 291; *Cowles* v. *Kidder,* 4 Foster, 364, 57 Am. Dec. 287; *Mendenhall* v. *Klinck,* 51 N. Y. 246. The partnership of Holton & Judevine was dissolved in 1867. In the dissolution Judevine ''took the lands in Hardwick,'' which we understand to mean all the lands there the firm claimed to own, and this seems to have been the understanding of both parties during the trial. The undisputed evidence was, that Holton died a good many years ago, but the firm ceased before he died. Judevine being one of the licensees, the death of Holton, the other licensee, did not as a matter of law revoke the license. *Chandler* v. *Spear,* 22 Vt. 388. Whether it was revoked by Judevine's attempted sale of the lot, or his rights therein, to one Mason, we do not decide (see *Bates* v. *Duncan,* 64 Ark. 339, 42 S. W. 410, 62 Am. St. Rep. 190; *Dark* v. *Johnson,* 55 Pa. St. 164, 93 Am. Dec. 732) ; for the license being personal, it certainly terminated with the death of Judevine, the surviving licensee. *Ruggles* v. *Lesure,* 24 Pick. 187; *Prince* v. *Case,* cited above; *De Haro* v. *United States,* 5 Wall. 599, 18 L. ed. 681. There is therefore no privity between the plaintiff and the defendant, for which reason, if for no other, she was not entitled to notice to quit before the commencement of the suit. And it being established that the land was granted for a public use, under our holdings when the case was here before the Statute of Limitations does not apply. 84 Vt. 1, 77 Atl. 877; *University of Vermont* v. *Reynolds,* 3 Vt. 542, 23 Am. Dec. 234.

From the foregoing authorities it follows, that the three special findings, consistent with each other, are, under the law, irreconcilably inconsistent with the general verdict, and as both cannot stand, the general verdict falls and the special findings control. As we have seen, the latter, as a matter of law, afford a sufficient basis for a different judgment from that justified by the former, and the plaintiff's motion for a judgment thereon

in its favor should have been granted. *Richardson* v. *Weare*, 62 N. H. 80; *P. H. & F. M. Root Co.* v. *Meeker*, 165 Ind. 132, 73 N. E. 253; *Foster* v. *Bemis Indianapolis Bag Co.*, 163 Ind. 351, 71 N. E. 953; *Adams* v. *Louisville, etc. R. Co.*, 82 Ky. 603; *Troy* v. *Brady*, 67 Ohio St. 65, 65 N. E. 616; *Awde* v. *Cole*, 99 Minn. 357, 109 N. W. 812.

The only other question necessary to consider in disposing of the case is the claim of the defendant, that if the plaintiff had no power to make the so-called perpetual lease, the only party that can complain of the exercise of such excess of power is the State, and its right was expressly reserved to it in the original charter. By the charter of the town, the right for the use of the County Grammar School, and the improvements, rents, interest and profits, arising therefrom, shall be under the control, order, direction, and disposal of the General Assembly of the State forever; with a proviso, that the County Grammar School for that county shall be given no more than an equal proportion, with other counties, of the net proceeds and avails of lands so granted, whenever a future Legislature shall, by law, order a division of the same. It was under this reserved power of control, order, direction, and disposal, that the General Assembly later granted said lands to the plaintiff with authority and power to hold and lease the same for the purpose of the grant; but giving no officer or member of the plaintiff any personal beneficial interest in the rents received. The effect of such grant was subsequently brought in question in the case of this plaintiff against Burt, 11 Vt. 632. In 1831 the Legislature incorporated a second County Grammar School in Caledonia County, at Lyndon. In 1836 an act was passed, authorizing the trustees of this second school to take possession of the grammar school lands in Lyndon, and in certain other towns in the county, and to hold and lease the same; and if these lands had been leased by the trustees of this plaintiff, the tenants were to attorn to the trustees of the school at Lyndon. The plaintiff there contended, that the act granting the lands to the Lyndon school was in violation of the provisions of the previous grant to the Peacham school, and therefore unconstitutional and void. It was held, that the Legislature had an absolute and entire control and disposal, for the use and purpose for which it was reserved, of the right for the use of grammar schools, and had the power to grant it to any one or more, and upon such limita-

tions and conditions as the Legislature chose to express, or without any condition whatever, in which case it would have only the implied condition that the use must ever be applied to the purpose of the grant; that the act created an aggregate corporation; that the grant, being to such a corporation, having perpetual succession, required no words of perpetuity, and was as unconditional, and as absolute, and of the same effect, as a grant to a man, and his heirs, and assigns, forever; and that it was obvious that such, at the time, was the understanding of all concerned. ''The Legislature annexed to the grant the express provision that a future legislature might distribute the avails of all such lands among the several counties; thereby clearly showing they understood that, by the grant, they parted with all control of the lands, except what they expressly reserved.'' It was further held, that the act of 1836 was an enactment impairing the obligations of a contract, in violation of the Constitution of the United States, and void. It seems quite clear from the doctrines there enunciated, that the State has no such right of property in the land in question as enables it to maintain an action against the defendant for the possession. On the other hand, it is equally clear, that the plaintiff may maintain such an action. Since the instrument of the pretended conveyance from the plaintiff to Holton & Judevine was utterly void as a conveyance, the rights of the plaintiff (beyond the resulting license to enter) were not affected thereby (*Bush* v. *Whitney*, 1 D. Chip. 369); and since the defendant undertakes to claim under a conveyance by that instrument, it is a full answer for the plaintiff, that the instrument was void, and nothing passed under it. *Wolcot* v. *Knight*, 6 Mass. 418.

By the statute 13 Eliz. c. 10, sec. 3, all leases, etc., made by any of the persons therein mentioned, and among them the ''master or guardian of any hospital,'' for more than one and twenty years, or three lives, of any lands there specified, whereupon the accustomed yearly rent, or more, shall be reserved and payable yearly during the said term, ''shall be utterly void and of none effect, to all intents, constructions, and purposes, any law, custom, or usage to the contrary anywise notwithstanding.'' It is said in Bacon's Abridgment, tit. ''Leases and Terms for Years,'' (H), referring to the case of *Collegiate Church of Southwell*, 1 Mod. 204, 2 Mod. 56, that, ''Where there is a chapter that hath no dean, as the chapter of the Collegiate

Church of Southwell, there, grants or leases made by them contrary to 13 Eliz. c. 10, are void *ab initio* against themselves; and so, of leases or grants by any other corporation aggregate, who have no head or principal person. For they must be either void *ab initio*, or good forever, because they continue always the same, and one has no superiority or power more than another." The case of *The Governors of Magdalen Hospital* v. *Knotts*, decided by the House of Lords in 1879, and reported in 4 App. Cas. 324, 15 Eng. Rul. Cas. 417, is much in point. There the governors of the Magdalen Hospital, an eleemosynary corporation created by statute for certain charitable purposes, made a lease in 1783 of certain lands of the hospital for the term of ninety-nine years, at a peppercorn rent. No claim of rent nor any assertion of title to the property had been made by the governors for above eighty years, until they commenced that action in chancery to recover possession of lands within the demise. The defendants relied on the Statute of Limitations for their defence. The Master of the Rolls held the lease not void, but only voidable at the option of the governors; that the present governors had, by bringing the action, exercised that option and avoided the lease; that the Statute of Limitations did not begin to run till action brought, and therefore did not apply. This was reversed by the court of appeal and judgment ordered for the defendants. On appeal to the House of Lords, it was held that the provisions of the statute of Elizabeth applied to the Magdalen Hospital, and to the lease in question; the Lord Chancellor saying it was clear that in the case of an eleemosynary corporation, the whole property of which was devoted to charity, the office-bearers and other members of the corporation having no personal interest whatever, the object of the statute must have been to make the property of the corporation absolutely inalienable, in any other way than by the particular form of lease authorized. Recognizing the doctrine laid down in the Southwell case as the true one, their Lordships further held that the lease was not merely voidable but *ab initio* void; that the defendants, or those whom they represent, must be taken to have been in possession of the property from the time of the execution of the lease without any title whatever, and consequently that the right of the governors to re-enter upon the land existed from the same time; and those in possession not having paid rent, or in any other way entered into the relation

of tenants, there was nothing to prevent the operation of the Statute of Limitations, and the governor's right to recover the land was barred.

The judgment below being for the defendant on the general verdict, the damages to the plaintiff were not assessed, and the cause will be remanded on that question.

*Judgment reversed, and judgment for the plaintiff to recover the seisin and possession of the demanded premises with costs.    Cause remanded for assessment of damages.*

After the foregoing opinion was promulgated but at the same term, the defendant moves for leave to re-argue the case (1) "because the defendant claims a prescriptive title in and to the demanded premises, and the judgment should either be for the defendant, or the cause should be remanded for a new trial to the end that the jury may find under proper instructions from the court, whether the defendant has such prescriptive title"; and (2) "because the court in its consideration of the case thus far has entirely overlooked or ignored the defendant's rights by prescription and also the evidence tending to show such rights although said rights are entirely consistent with the general verdict of the jury, the special findings of the jury, and the opinion of this Court."

It was held in this case (84 Vt. 1, 77 Atl. 877), that by statute the Statute of Limitations cannot extend to lands given, granted, sequestered, or appropriated to a public, pious, or charitable use; and, referring to what was there held, we have said in the foregoing opinion, that it being established that the land in question was granted for a public use, the Statute of Limitations does not apply. Moreover, the fourth special finding, that the defendant holds possession of the lot in controversy "under and by virtue of a perpetual lease from plaintiff to her grantors," is inconsistent with a prescriptive title, or prescriptive rights, in defendant. In *Mayor of Kingston* v. *Horner*, Cowp. 102, Lord Mansfield, speaking of presumptions arising from length of time, says: "All evidence is according to the subject-matter to which it is applied. There is a great difference between length of time which operates as a bar to a claim, and that which is only used by way of evidence. A jury is concluded by length of time which operates as a bar: * * *.

But length of time used merely by way of evidence, may be left to the consideration of the jury to be credited or not, and to draw their inference one way or the other, according to circumstances.'' And. the distinction between a prescriptive title, or prescriptive rights, which in a given case cannot by law exist, and a lease found on presumptive· evidence (based upon long continuous possession under a claim of right), and accompanying circumstances, is well shown in *University of Vermont* v. *Reynolds*, 3 Vt. 542, 23 Am. Dec. 234, and in this present case, 84 Vt. 1, 77 Atl. 877. See also *Sellick* v. *Starr*, 5 Vt. 255, and *Marr's Heirs* v. *Gilliam*, 1 Coldw. 488, 501.

*The motion for a re-argument is overruled. Let the full entry order go down.*